[No. S035538. June 22, 1995.]

ABRAHAM LEVY, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
JOSEPH H. GOLANT, Real Party in Interest.

**COUNSEL**

Greenberg, Glusker, Fields, Claman & Machtinger, Michael K. Collins, Harvey R. Friedman and Patricia A. Millett for Petitioner.

No appearance for Respondent.

Ollestad, Freedman, Taylor & Miller, Morse Taylor, Michael Miller and Scott R. Ames for Real Party in Interest.

## OPINION

KENNARD, J.—At the time relevant here, Code of Civil Procedure section 664.6 (hereafter section 664.6) provided: "If *parties* to pending litigation stipulate, in writing or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement." (Italics added.)[1] In this case we address an issue on which the Courts of Appeal have issued conflicting decisions: whether the written stipulation must be signed personally by the litigant, or whether the signature of the litigant's attorney is sufficient to create a settlement enforceable under section 664.6. We conclude that section 664.6 requires the signature of the litigant.

## BACKGROUND

The following summary of facts is derived from the pleadings and the papers submitted in support of and in opposition to petitioner/litigant Abraham Levy's motion to enter judgment to enforce the settlement agreement signed by the parties' attorneys.

Levy invented the "Auto-Shade," an accordion-fold device that can be placed on a car's dashboard to protect the interior from the sun. Real party in interest, attorney Joseph H. Golant, represented Levy in a number of matters between 1985 and 1991. During this period, Golant received more than $2.5 million in attorney fees and costs. Following a dispute regarding the amount of attorney fees owed, Golant, represented by Robert B. Owens, filed a lawsuit against Levy on November 20, 1991, to recover $360,000 in attorney fees and costs. Levy, represented by Harvey R. Friedman, filed an answer and a cross-complaint.

Shortly before the scheduled trial date, Attorneys Owens and Friedman started to discuss settlement of the case. The discussion culminated in a five-page letter Friedman faxed to Owens. At Friedman's request, Owens confirmed the contents of the five-page letter by writing on it, "This document, with the few changes we discussed, is acceptable. [¶] Rob Owens." When Owens's client, Golant, refused to sign the formal settlement agreement, Friedman, on behalf of his client, Levy, filed a "Motion for Entry of Judgment to Enforce Settlement and for Sanctions."

Following a hearing on the motion, the trial court found that it was undisputed that Friedman had sent Owens a letter purporting to confirm a

---

[1]In 1993, the Legislature amended section 664.6 by providing, among other things, that the written stipulation be "signed by the parties outside the presence of the court," and that the oral stipulation before the court be made "on the record." (Stats. 1993, ch. 768, § 1.) An amendment to this provision in 1994 deleted the phrase "on the record." (Stats. 1994, ch. 587, § 7.) These amendments do not affect the resolution of this case.

settlement between the parties, that Friedman requested Owens to confirm that the terms of the settlement were acceptable, and that Owens did so confirm. The court then noted a division of authority among the Courts of Appeal on the issue of whether a settlement agreement signed by a party's attorney, but not by the party, was enforceable under section 664.6. The court denied the motion. It relied on *Nicholson v. Barab* (1991) 233 Cal.App.3d 1671 [285 Cal.Rptr. 441], a decision of the Second District Court of Appeal, which held that the signature of the attorney alone, without that of the client, is insufficient to create a binding settlement agreement under section 664.6. The trial court observed that because the procedure to enforce a settlement under section 664.6 was not exclusive, the parties could pursue other avenues of relief, such as a motion for summary judgment, a separate suit in equity, or an amendment of the pleadings.

Friedman, on behalf of his client, Levy, sought a writ of mandate from the Court of Appeal, contending that *Nicholson v. Barab, supra*, 233 Cal.App.3d 1671, on which the trial court had relied, was incorrectly decided and was in direct conflict with another Court of Appeal decision, *Diaz v. May* (1993) 15 Cal.App.4th 1268 [19 Cal.Rptr.2d 409]. After a summary denial of the petition for writ of mandate, Friedman sought relief in this court. To resolve the conflict among the Courts of Appeal, we issued an alternative writ.

## DISCUSSION

At the time relevant here, section 664.6 provided in its entirety: "If *parties* to pending litigation stipulate, in writing or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement." (Stats. 1981, ch. 904, § 2, p. 3437, italics added.) The sole question before us is whether the term "parties" literally means the litigants personally or whether it also includes the litigants' attorneys of record. As we mentioned earlier, the Courts of Appeal have reached conflicting decisions on this issue.

The first decision to interpret the term "parties" in section 664.6 was *Haldeman v. Boise Cascade* (1985) 176 Cal.App.3d 230 [221 Cal.Rptr. 412]. In that case, the Court of Appeal interpreted the term "parties" to mean the litigants as well as their attorneys. In *Haldeman*, the attorneys for the parties agreed to a settlement at a judicially supervised settlement conference, and then placed the terms of the settlement on the record in court. When the plaintiff, who had not been present at the proceedings, refused to sign the release that was an integral part of the settlement, the trial court granted the defendant's motion under section 664.6 to compel enforcement of the settlement. (176 Cal.App.3d at pp. 232-233.)

In rejecting the plaintiff's contention that the settlement could not be enforced because she had not personally agreed to the settlement, the *Haldeman* court pointed to the statute governing summary judgments (Code Civ. Proc., § 437c ["Any party may move for summary judgment . . ."]) as an example of certain provisions in our Code of Civil Procedure that use the term "party" but nevertheless have been generally understood to include the litigant's attorney of record. (*Haldeman* v. *Boise Cascade, supra,* 176 Cal.App.3d at pp. 233-234.)

Thereafter, the contrary view—that the stipulation to settle must be signed personally by the party litigants and not solely by their attorneys—was adopted in *Gallo* v. *Getz* (1988) 205 Cal.App.3d 329 [252 Cal.Rptr. 193]. In support of its holding, the *Gallo* court cited two decisions, *Datatronic Systems Corp.* v. *Speron, Inc.* (1986) 176 Cal.App.3d 1168, 1175 [222 Cal.Rptr. 658] and *City of Fresno* v. *Maroot* (1987) 189 Cal.App.3d 755, 762 [234 Cal.Rptr. 353]. (*Gallo* v. *Getz, supra,* 205 Cal.App.3d at p. 333.) The *Gallo* holding was followed in *Nicholson* v. *Barab, supra,* 233 Cal.App.3d 1671, 1681, the decision upon which the trial court in this case based its ruling.

Recently, in *Diaz* v. *May, supra,* 15 Cal.App.4th 1268, the Court of Appeal, after noting the conflicting decisions on the issue, sided with the court in *Haldeman* v. *Boise Cascade, supra,* 176 Cal.App.3d 230, in concluding that the term " 'parties' was intended to have the same meaning in section 664.6 as it generally has in civil procedure, i.e., that it includes the parties acting through their duly authorized attorneys of record." (*Diaz* v. *May, supra,* at p. 1273.)

To resolve this conflict among the Courts of Appeal, we must determine whether the Legislature intended the term "parties" as it appears in section 664.6 ("If parties to pending litigation stipulate . . . for settlement of the case . . .") to mean only the litigants personally or to include the attorneys representing the litigants. To ascertain such intent, we look first to the words of the statute. (*Lennane* v. *Franchise Tax Bd.* (1994) 9 Cal.4th 263, 268 [36 Cal.Rptr.2d 563, 885 P.2d 976]; *Woods* v. *Young* (1991) 53 Cal.3d 315, 323 [279 Cal.Rptr. 613, 807 P.2d 455].) When the words are susceptible to more than one reasonable interpretation, we consider a variety of extrinsic aids, including the statutory context and the circumstances of the statute's enactment, in determining legislative intent. (See, e.g., *People* v. *Woodhead* (1987) 43 Cal.3d 1002, 1007-1008 [239 Cal.Rptr. 656, 741 P.2d 154]; *Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387 [241 Cal.Rptr. 67, 743 P.2d 1323].)

The word "parties" is reasonably susceptible to more than one interpretation. As noted by the Courts of Appeal in *Haldeman* v. *Boise Cascade, supra,*

176 Cal.App.3d at pages 233-234, and *Diaz* v. *May, supra,* 15 Cal.App.4th at page 1273, the term "party," as used in a number of our civil procedure statutes, is commonly understood to mean not only the actual litigant, but also the litigant's attorney of record. (See, e.g., Code Civ. Proc., §§ 437c ["Any party may move for summary judgment"], 438, subd. (b)(1) ["A party may move for judgment on the pleadings"], 2017, subd. (a) ["any party may obtain discovery"].) Motions under these particular statutes are routinely made by attorneys in the course of representing their clients.

But the word "party" is also susceptible of a narrower meaning, namely the specific person or entity by or against whom legal proceedings are brought. (Black's Law Dict. (5th ed. 1979) p. 1119, col. 2 [defining parties], p. 1122, col. 1 [defining party].) This meaning of the term "party" can also be found in our statutory law. For example, Code of Civil Procedure section 2033, subdivision (g) provides: "The *party* to whom the requests for admission are directed shall sign the response under oath, unless the response contains only objections." (Italics added.) When, as in this particular instance, the subject of the statute may affect the substantial rights of the litigants themselves, the term "party" literally means the party litigant, not the litigant's attorney. (See *Brigante* v. *Huang* (1993) 20 Cal.App.4th 1569, 1574-1575 [25 Cal.Rptr.2d 354]; *Steele* v. *Totah* (1986) 180 Cal.App.3d 545, 550 [225 Cal.Rptr. 635].)[2]

Because, as just shown, the term "party" can have more than one meaning, we next examine the statutory context in which it is used, so we can determine legislative intent. Section 664.6 governs the entry of judgment pursuant to the terms of a settlement agreement. Unlike the steps an attorney may take on behalf of the client that are incidental to the management of a lawsuit, such as making or opposing motions, seeking continuances, or conducting discovery, the settlement of a lawsuit is not incidental to the management of the lawsuit; it ends the lawsuit. Accordingly, settlement is such a serious step that it requires the client's knowledge and express consent. (1 Witkin, Cal. Procedure (3d ed. 1985) Attorneys, § 194, pp. 221-222.) As we stated in *Blanton* v. *Womancare, Inc.* (1985) 38 Cal.3d 396 [212 Cal.Rptr. 151, 696 P.2d 645, 48 A.L.R.4th 109]: " '[T]he law is well settled that an attorney must be specifically authorized to settle and compromise a claim, that merely on the basis of his employment he has no implied or ostensible authority to bind his client to a compromise settlement of pending litigation. . . .' " (*Id.* at p. 404, quoting *Whittier Union High Sch. Dist.* v. *Superior Court* (1977) 66 Cal.App.3d 504, 508 [136 Cal.Rptr. 86].)

---

[2]Contrary to the assertion of litigant Golant, the 1993 amendment to section 664.6 does not remove the ambiguity inherent in the Legislature's use of the word "parties." Because the amendment (see fn. 1, *ante*) reiterated the word "parties" without further qualification or explanation, it is not helpful in resolving the ambiguity inherent in the term.

In *Blanton*, a medical malpractice action, the plaintiff's attorney, without his client's consent, entered into a stipulation with the defendants to submit the case to *binding* arbitration. We concluded that the attorney's unauthorized stipulation could not bind the client. We said: "An attorney retained to represent a client in litigation is clothed with certain authority by reason of that relationship. 'The attorney is authorized by virtue of his employment to bind the client in procedural matters arising during the course of the action . . . . "In retaining counsel for the prosecution or defense of a suit, the right to do many acts in respect to the cause is embraced as ancillary, or incidental to the general authority conferred, and among these is included the authority to enter into stipulations and agreements in all matters of procedure during the progress of the trial. Stipulations thus made, so far as they are simply necessary or incidental to the management of the suit, and which affect only the procedure or remedy as distinguished from the cause of action itself, and the essential rights of the client, are binding on the client." [Citation]' (*Linsk v. Linsk* (1969) 70 Cal.2d 272, 276-277 [74 Cal.Rptr. 544, 449 P.2d 760].)" (*Blanton v. Womancare, Inc., supra,* at pp. 403-404.) We went on to say: "An attorney is not authorized, however, merely by virtue of his retention in litigation, to 'impair the client's substantial rights or the cause of action itself.' (*Linsk v. Linsk* [(1969)] 70 Cal.2d [272,] 276.)" (*Id.,* at p. 404.) We explained that the stipulation to submit to binding arbitration, to which the plaintiff's attorney had sought to bind his client, involved a substantial right because it would have, without the client's consent, diverted the dispute from one forum, the court, to a different one, arbitration. (*Id.* at p. 407.)

In this case, the agreement to settle was signed only by the attorneys for the litigants, rather than the parties themselves. Because the settlement of a lawsuit is a decision to end the litigation, it obviously implicates a substantial right of the litigants themselves. Given this circumstance and section 664.6's focus on settlements, we conclude that in providing for an enforcement mechanism for settlements by "parties," the Legislature intended the term to literally mean the litigants personally. This conclusion is also supported by the circumstances preceding and surrounding the enactment of section 664.6.

Section 664.6 was enacted in 1981. (Stats. 1981, ch. 904, § 2, p. 3437.) As this court noted recently in *In re Marriage of Assemi* (1994) 7 Cal.4th 896, 904-905 [30 Cal.Rptr.2d 265, 872 P.2d 1190], prior to 1981 the Courts of Appeal had expressed conflicting views concerning the proper procedures to enforce settlement agreements in pending litigation.

Under one line of authority, settlement agreements preceding the enactment of section 664.6 in 1981 could be enforced only by a motion for

summary judgment, a separate suit in equity, or an amendment to the pleadings. This became the dominant view. (See, e.g., *Duran* v. *Duran* (1983) 150 Cal.App.3d 176, 179 [197 Cal.Rptr. 497]; *Hastings* v. *Matlock* (1980) 107 Cal.App.3d 876, 880-881 [166 Cal.Rptr. 229].) It was based on the theory that nonstatutory motions to enforce settlements were motions based on facts outside the pleadings and, under this court's decisions (*Vesely* v. *Sager* (1971) 5 Cal.3d 153, 167-169 [95 Cal.Rptr. 623, 486 P.2d 151]; *Pianka* v. *State of California* (1956) 46 Cal.2d 208, 211 [293 P.2d 458]), had to be treated as motions for summary judgment that could be granted only if all of the papers submitted showed there was no triable issue of fact. (See, e.g., *Duran* v. *Duran*, *supra*, at p. 179; *Hastings* v. *Matlock*, *supra*, at pp. 880-881.)

A second line of authority permitted motions to enforce settlements based on facts outside the pleadings if the fact of settlement and the terms of the settlement were not subject to reasonable dispute. (*Corkland* v. *Boscoe* (1984) 156 Cal.App.3d 989, 993 [203 Cal.Rptr. 356], quoting *Gopal* v. *Yoshikawa* (1983) 147 Cal.App.3d 128, 132 [195 Cal.Rptr. 36]; *Gregory* v. *Hamilton* (1978) 77 Cal.App.3d 213, 219-220 [142 Cal.Rptr. 563].) The theory underlying this approach was that the statutory means of enforcing settlements by motions for summary judgment, separate suits in equity, or amendments to pleadings were inadequate, and that a court therefore must have authority to enforce settlements as a means of controlling proceedings before the court and protecting the interests of the parties. (*Gopal* v. *Yoshikawa*, *supra*, at p. 132.)

The conflict was resolved in 1981 when the Legislature enacted section 664.6, which created a summary, expedited procedure to enforce settlement agreements when certain requirements that decrease the likelihood of misunderstandings are met. Thus the statute requires the "parties" to stipulate in writing or orally before the court that they have settled the case. The litigants' direct participation tends to ensure that the settlement is the result of their mature reflection and deliberate assent. This protects the parties against hasty and improvident settlement agreements by impressing upon them the seriousness and finality of the decision to settle, and minimizes the possibility of conflicting interpretations of the settlement. (See *In re Marriage of Assemi*, *supra*, 7 Cal.4th at p. 905; *City of Fresno* v. *Maroot*, *supra*, 189 Cal.App.3d at p. 762; *Datatronic Systems Corp.* v. *Speron, Inc.*, *supra*, 176 Cal.App.3d at p. 1174.)[3] It also protects parties from impairment of their substantial rights without their knowledge and consent. (See *Blanton* v. *Womancare, Inc.*, *supra*, 38 Cal.3d at p. 404.)

---

[3]This court's statement in *In re Marriage of Assemi*, *supra*, 7 Cal.4th 896, that under section 664.6 trial courts may take evidence to determine if the parties reached a binding mutual accord (7 Cal.4th at p. 905), and its statement referring to a stipulated settlement being

For the reasons set forth above, we conclude that the term "parties" as used in section 664.6 ("If parties to pending litigation stipulate . . . for settlement of the case . . .") means the litigants themselves, and does not include their attorneys of record.[4] Because in this case Golant, a party litigant, did not sign the agreement to settle, it is not enforceable under section 664.6.[5]

The peremptory writ is denied and the alternative writ is discharged.

Lucas, C. J., Mosk, J., Arabian, J., Baxter, J., and George, J., concurred.

**WERDEGAR, J.**—I respectfully dissent.

This case presents a simple question of statutory interpretation: Is a settlement agreement entered into by a *duly authorized* attorney on behalf of his or her client enforceable under the summary procedures of Code of Civil Procedure section 664.6?[1] The majority concludes it is not. Failing, as a practical matter, to distinguish between the need for *authorization* of a settlement agreement, on the one hand, and the manner of its *execution*, on the other, the majority holds that, irrespective of authorization, only settlement agreements executed by the parties personally can be enforced by the section 664.6 procedures. As will appear, this conclusion, in my view, is illogical, contrary to legislative intent, and undermining of the policy underlying enactment of section 664.6.

Citing the truism that the settlement of a lawsuit, as a decision to end the litigation, "implicates a substantial right of the litigants themselves" (maj. opn., *ante*, at p. 584), the majority reaches its conclusion by narrowly construing "parties" in section 664.6 to encompass only litigants, personally. For the reasons that follow, I would construe "parties" to encompass, as well, litigants acting through their duly authorized attorneys of record.

First, narrowly construing "parties," as does the majority, will waste judicial resources by precluding the enforcement of authorized attorney-signed settlement agreements under section 664.6's summary procedures.

---

"presented orally by the party litigants *or their counsel* to a judge" (*id.* at p. 906, italics added), must be read in the context of requiring direct party-litigant participation in the settlement.

[4]*Haldeman* v. *Boise Cascade, supra*, 176 Cal.App.3d 230 and *Diaz* v. *May, supra*, 15 Cal.App.4th 1268, are disapproved to the extent they are inconsistent with the views expressed herein.

[5]We note that this statutory procedure is not the exclusive means to enforce a settlement. (See *Kilpatrick* v. *Beebe* (1990) 219 Cal.App.3d 1527, 1529 [269 Cal.Rptr. 52].) Alternative procedures are a motion for summary judgment, a separate suit in equity, or an amendment to the pleadings in this action.

[1]Code of Civil Procedure section 664.6, at the time relevant here, provided as follows: "If *parties* to pending litigation stipulate, in writing or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the term of the settlement." (Italics added.) All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

All agree section 664.6 can be "an expedient and cost effective means of enforcing a settlement agreement." (*City of Fresno* v. *Maroot* (1987) 189 Cal.App.3d 755, 762 [234 Cal.Rptr. 353]. See also *Diaz* v. *May* (1993) 15 Cal.App.4th 1268, 1271 [19 Cal.Rptr.2d 409].) Narrowly construing the statute will waste judicial resources, because it will bar expeditious enforcement of authorized attorney-signed settlement agreements, thereby necessitating their enforcement under more cumbersome and wasteful alternative procedures.

Section 664.6, as the majority acknowledges, "is not the exclusive means to enforce a settlement. . . . Alternative procedures are a motion for summary judgment, a separate suit in equity, or an amendment to the pleadings . . . ." (Maj. opn., *ante*, at p. 586, fn. 5], citing *Kilpatrick* v. *Beebe* (1990) 219 Cal.App.3d 1527, 1529 [269 Cal.Rptr. 52].) But, as the majority notes, when our Legislature promulgated section 664.6, there was sentiment that "the statutory means of enforcing settlements by motions for summary judgment, separate suits in equity, or amendments to the pleadings were inadequate . . . ." (Maj. opn., *ante*, at p. 585, citing *Gopal* v. *Yoshikawa* (1983) 147 Cal.App.3d 128, 132 [195 Cal.Rptr. 36].) Yet, under the majority's construction of "parties," attorney-signed settlement agreements will henceforth be enforceable *only* by way of these alternative—and inadequate—procedures.

To grasp the critical comparisons, it is important to understand that construing "parties" in section 664.6 to embrace only the party litigants, and not their counsel, will *not*, as a practical matter, alter the behavior of attorneys (or clients) so as to diminish the number of attorney-signed settlement agreements. The realities of litigation practice are such that, regardless of whether section 664.6 is construed narrowly, to refer only to the party litigants, or more broadly, to embrace their counsel, attorneys may be expected in any event, as a precautionary measure, to obtain litigants' signatures on settlement agreements whenever they can do so without losing the opportunity to settle. Conversely, attorneys with settlement authority may also be expected to conclude settlements on their own signatures where time and circumstances do not permit obtaining their clients' signatures. The possibility of enforcement litigation is only a single, relatively minor factor among the many an attorney must consider in deciding, when authorized, whether to conclude a particular settlement agreement.

Opportunities to settle pending litigation frequently present themselves within a restricted window of opportunity—often "on the steps of the courthouse." Almost invariably, the incentive to settle when the opportunity presents itself will be greater than the incentive to delay settlement so as to secure the clients' signatures in order to obtain an agreement that will be

summarily enforceable under section 664.6. We cannot reasonably expect that construing section 664.6 to preclude enforcement thereunder of attorney-signed agreements will cause counsel in any significant number of cases, having been authorized to settle, nevertheless to forbear from doing so when the opportunity arises but the client is not at hand to sign personally.

While the majority's construction of section 664.6 thus will *not* significantly reduce the number of attorney-signed agreements, it *will* relegate enforcement of such agreements to the nonsummary alternative procedures the majority concedes will still be available. Those alternative procedures are undeniably slower and more expensive than section 664.6's summary procedures. Inevitably, therefore, the majority's holding will increase the total judicial resources expended on enforcing attorney-signed settlement agreements.[2]

Second, contrary to the majority's suggestion, excluding attorney-signed settlement agreements from the enforcement procedures of section 664.6 will not serve to protect litigants' substantive rights. The majority's reasoning in this regard is flawed.

In purporting to discuss the relevant "statutory context," the majority, significantly, does *not* focus on section 664.6's actual language or on the term "parties" as used generally in the Code of Civil Procedure. Instead, the majority offers a red herring: "settlement [of a lawsuit] is such a serious step that it requires the client's knowledge and express consent." (Maj. opn., *ante*, at p. 583, citing 1 Witkin, Cal. Procedure (3d ed. 1985) Attorneys, § 194, pp. 221-222.) But this case is *not* about whether an attorney must have client authority to settle. That an attorney must be specifically authorized to settle a claim (*Blanton* v. *Womancare Inc.* (1985) 38 Cal.3d 396 [212 Cal.Rptr. 151, 696 P.2d 645]) is undisputed. This case is only about what procedures will be available to enforce settlements that clients have in fact authorized.

Noting that the settlement of the lawsuit, as a decision to end the litigation, "implicates a substantial right of the litigants themselves," the majority concludes that "in providing for an enforcement mechanism for settlement by 'parties,' the Legislature intended the term to literally mean the litigants personally." (Maj. opn., *ante*, at p. 584.) The conclusion, however, does not follow from the stated premise. The unstated assumption is that a narrow construction of "parties" is more protective of litigants' substantive rights than the broader construction I favor. Such an assumption is not warranted.

---

[2]Nor can the majority claim any efficiency advantage with respect to *litigant*-signed settlement agreements. Significantly, the majority does not argue narrowly construing "parties" will make actual section 664.6 proceedings more efficient. Obviously, any litigant-signed settlement agreement will be summarily enforceable under section 664.6 whether "parties" in that statute is construed broadly or narrowly.

No one disputes that "a settlement agreement signed only by the attorney is generally open to the claim it was unauthorized." (*Diaz* v. *May, supra,* 15 Cal.App.4th at p. 1274.) Contrary to the majority's implied suggestion, however, construing "parties" in section 664.6 to embrace only the individual litigants will *not* indirectly forestall authorization disputes by diminishing the incidence of attorney-signed settlement agreements generally. As previously discussed, in view of the availability of alternative enforcement procedures and the realities of litigation practice, narrowly construing the statute will not significantly deter attorneys from concluding attorney-signed agreements.

On the other hand, as the majority fails to acknowledge, the question of an attorney's authorization is within the scope of a section 664.6 hearing. When " 'acting upon a section 664.6 motion, the trial court must determine whether the parties entered into a valid and binding settlement of all or part of the case.' " (*Diaz* v. *May, supra,* 15 Cal.App.4th at p. 1275, quoting *Corkland* v. *Boscoe* (1984) 156 Cal.App.3d 989, 994 [203 Cal.Rptr. 356].) " 'Even where there are contentions of disputed facts . . . the Legislature has now approved the filing of a motion under section 664.6 . . . .' " (*Ibid.*) Should authorization issues arise, " 'trial judges, in the sound exercise of their discretion, may receive oral testimony or may determine the motion upon declarations alone.' " (*Ibid.*; see also *In re Marriage of Assemi* (1994) 7 Cal.4th 896, 905 [30 Cal.Rptr.2d 265, 872 P.2d 1190].) Because section 664.6 proceedings in fact embrace authorization issues, we need not construe that statute as requiring litigants' personal signatures in order to assure that only authorized agreements are enforced thereunder.

That counsel's oral stipulation suffices in a section 664.6 enforcement proceeding was impliedly acknowledged by this court in *In re Marriage of Assemi, supra,* 7 Cal.4th 896. There we noted that "a stipulated settlement agreement presented orally by the party litigants *or their counsel* to a judge, in the course of a settlement conference supervised by that judge, satisfies the 'before the court' requirement of section 664.6. . . ." (*Id.* at p. 906, citing *Casa de Valley View Owner's Assn.* v. *Stevenson* (1985) 167 Cal.App.3d 1182 [213 Cal.Rptr. 790] and *Richardson* v. *Richardson* (1986) 180 Cal.App.3d 91 [225 Cal.Rptr. 370], italics added.) The majority asserts *Assemi* "must be read in the context of requiring direct party-litigant participation in the settlement." (Maj. opn., *ante,* at p. 586, fn. 3].) Perhaps so. Nevertheless, in citing *Richardson, supra,* with approval in *Assemi,* we impliedly recognized that, for purposes of section 664.6, sufficient "party-litigant participation" may be assured even when litigants act through their attorneys. In *Richardson,* the Court of Appeal upheld enforcement under section 664.6 of a settlement agreement between husband and wife presented

by counsel orally to the judge during a mandatory settlement conference and based solely on what "*counsel* understood" to have been offered. (See *Richardson* v. *Richardson, supra,* 180 Cal.App.3d at p. 94, italics added.)

On balance, then, the majority's construction of "parties" in section 664.6 will not serve, relative to a broader construction, to heighten the protection of litigants' substantive rights against compromise through unauthorized settlement agreements.

Third, because it will not diminish the number of attorney-signed settlement agreements, the majority's construction of "parties" will generate none of the policy advantages the majority claims. In particular, the majority's narrow construction will not, as claimed, "tend[] to ensure that the settlement is the result of [the litigants'] mature and deliberate assent" (maj. opn., *ante,* at p. 585), because attorneys, as previously stated, will continue to conclude settlement on their own signatures, where necessary. Neither will it (relative to a broader construction) "protect[] the parties against hasty and improvident settlement agreements" or "minimize[] the possibility of conflicting interpretations of the settlement" (*ibid.,* citing *In re Marriage of Assemi, supra,* 7 Cal.4th at pp. 904-905; *City of Fresno* v. *Maroot, supra,* 189 Cal.App.3d at p. 762; *Datatronic Systems Corp.* v. *Speron, Inc.* (1986) 176 Cal.App.3d 1168, 1174 [222 Cal.Rptr. 658]), because attorneys authorized to settle will not forgo the opportunity to settle, though the client is not at hand, on the chance another opportunity will arise when the client is near.

Fourth, construing "parties" to encompass litigants acting through their attorneys of record, as I favor, would be consistent with the Legislature's intent in enacting and amending section 664.6. As the majority recognizes, "[t]he word 'parties' is reasonably susceptible to more than one interpretation." (Maj. opn., *ante,* at p. 582, citing *Diaz* v. *May, supra,* 15 Cal.App.4th at p. 1273; *Haldeman* v. *Boise Cascade* (1985) 176 Cal.App.3d 230, 233-234 [221 Cal.Rptr. 412].) To resolve the ambiguity, we look to indicators of legislative intent. (*People* v. *Woodhead* (1987) 43 Cal.3d 1002, 1007-1008 [239 Cal.Rptr. 656, 741 P.2d 154]; *Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387 [241 Cal.Rptr. 67, 743 P.2d 1323].)

In section 664.6, the majority argues, "the Legislature intended the term to literally mean the litigants personally." (Maj. opn., *ante,* at p. 584.) Nothing, however, in the legislative history of section 664.6 supports such a conclusion, nor does the majority claim otherwise. Instead, the majority purports to examine "the statutory context in which ["parties"] is used." (Maj. opn., *ante,* at p. 583.) Yet section 664.6's statutory context actually supports the broader construction of "parties" I favor, not the majority's construction.

The general signature requirement for court papers in California is that "[e]very pleading, petition, written notice of motion, or other similar paper shall be signed by at least one attorney of record in the attorney's individual name . . . ." (§ 128.7, subd. (a).) For the purpose of this general requirement, only "if the party is not represented by an attorney" must the paper be signed by the party, personally. (*Ibid.*)

The majority acknowledges "the term 'party,' as used in a number of our civil procedure statutes, is commonly understood to mean not only the actual litigant, but also the litigant's attorney of record." (Maj. opn., *ante*, at p. 583, citing §§ 437c ["[a]ny party may move for summary judgment"], 438, subd. (b)(1) ["[a] party may move for judgment on the pleadings"], 2017, subd. (a) ["any party may obtain discovery"].) In fact, " '[c]ountless other examples of use of the terms "party" or "parties" appear in our statutes, and it is understood universally that the terms are intended to include the party litigant personally or through his attorney of record.' " (*Diaz* v. *May, supra,* 15 Cal.App.4th at p. 1272, quoting *Haldeman* v. *Boise Cascade, supra,* 176 Cal.App.3d at pp. 233-234.) We are required to give effect to statutes according to the usual, ordinary import of the language employed in framing them. (*People* v. *Belleci* (1979) 24 Cal.3d 879, 884 [157 Cal.Rptr. 503, 598 P.2d 473].)

The majority cannot point to a single affirmative indication our Legislature intended the term "parties" in section 664.6 to have a different meaning than it has generally in the Code of Civil Procedure. Plainly, "[i]n enacting section 664.6, had the Legislature intended 'parties' to have a meaning other than this commonly understood meaning, it could and would have provided so in the statute." (*Haldeman* v. *Boise Cascade, supra,* 176 Cal.App.3d at p. 234, citing *People* v. *Rodriguez* (1984) 160 Cal.App.3d 207, 213 [206 Cal.Rptr. 563].)

The majority purports to draw upon "the circumstances preceding and surrounding the enactment of section 664.6." (Maj. opn., *ante*, at p. 584.) The only "circumstance" the majority cites, however, is the existence in 1981 of "conflicting views concerning the proper procedures to enforce settlement agreements in pending litigation." (*Ibid.*) As the majority correctly notes, the Legislature, in section 664.6, addressed the conflict by "creat[ing] a summary, expedited procedure" for enforcement of settlement agreements. (Maj. opn., *ante*, at p. 585.) That in so doing the Legislature meant to preclude enforcement under section 664.6 of *authorized* attorney-signed settlement agreements does not, however, follow.

The Legislature in enacting section 664.6 apparently envisioned an "expedient and cost effective" alternative to statutory enforcement procedures.

(*City of Fresno* v. *Maroot, supra,* 189 Cal.App.3d at p. 762.) Had the Legislature intended to achieve its efficiency objective by reducing the incidence of authorization disputes, it presumably could have acted to restrict attorneys' established practice of signing settlement agreements. Section 664.6, however, neither expressly forbids, nor can, even if narrowly construed, curtail that practice. As noted, moreover, section 664.6 proceedings—as presently constituted—must address authorization concerns.

Apparently, then, the Legislature, in enacting section 664.6, intended to achieve efficiency in the enforcement of settlement agreements not by curtailing authorization disputes, but, rather, through the institution of summary procedures. The efficiency benefits of summary procedures are maximized, of course, when such procedures are available in the widest possible class of cases. A construction of "parties" that permits summary enforcement under section 664.6 of authorized attorney-signed settlement agreements thus accords more with discernible legislative intent than does the majority's construction, restricting the statute to cases involving only litigant-signed agreements.[3]

Fifth, construing "parties" to encompass litigants acting through their attorneys would be consistent with the language of section 664.6 itself. Section 664.6 commences with the phrase: "If parties to pending litigation *stipulate* . . . ." (Italics added.) Because a stipulation is "an agreement *between counsel* respecting business before the court" (*Palmer* v. *City of Long Beach* (1948) 33 Cal.2d 134, 142 [199 P.2d 952], italics added), the Legislature's use of the legal term "stipulation" in section 664.6 indicates the Legislature intended "parties" to encompass counsel when acting for the party litigants. (See *Woods* v. *Young* (1991) 53 Cal.3d 315, 323 [279 Cal.Rptr. 613, 807 P.2d 455] [statutory words are to be construed in context]; *California Mfrs. Assn.* v. *Public Utilities Com.* (1979) 24 Cal.3d 836, 844 [157 Cal.Rptr. 676, 598 P.2d 836] [same].)

Sixth, construing "parties" to encompass litigants acting through their attorneys would accord with important public policy considerations. California has a strong policy encouraging settlements. (*Poster* v. *Southern Cal. Rapid Transit Dist.* (1990) 52 Cal.3d 266, 270 [276 Cal.Rptr. 321, 801 P.2d

---

[3]It is also significant that when the Legislature amended section 664.6 in 1994, it made no changes to affect the meaning of "parties," although it was presumably aware that the Court of Appeal had construed "parties" in *Diaz* v. *May, supra,* 15 Cal.App.4th 1268, to include litigants acting through their counsel. *Diaz* was the most recent and extensively reasoned opinion on point at the time of the amendments. When the Legislature amends a statute without altering portions of the provision that have previously been judicially construed, the Legislature is presumed to have been aware of and to have acquiesced in the previous judicial construction. (*Harris* v. *Capitol Growth Investors* (1991) 52 Cal.3d 1142, 1156 [278 Cal.Rptr. 614, 805 P.2d 873].)

1072]; *T.M. Cobb Co.* v. *Superior Court* (1984) 36 Cal.3d 273, 280 [204 Cal.Rptr. 143, 682 P.2d 338]; *McClure* v. *McClure* (1893) 100 Cal. 339, 343 [34 P. 822].) Settlements are common and are negotiated primarily between counsel. If counsel cannot rely among themselves on their own signatures, the process is unduly encumbered and the potential for gamesmanship increased. As real party in interest Golant points out, public policy is promoted by laws and procedures that make the negotiation of binding settlements expedient, efficient and certain.

The majority's conclusion that "parties" in section 664.6 does not encompass the litigants acting through their attorneys will in practice militate *against* the policy favoring settlements, because the alternative available enforcement procedures are slower and more expensive. Amending pleadings to assert the settlement as an additional cause of action or as a defense reopens discovery and adds further complications and time to the trial of the action. Material factual disputes often will exist or can be artfully pled in order to defeat summary adjudication. The determination of the issue must then await trial of the entire cause, thus defeating the efficiency purposes underlying the policy favoring settlement.

On the other hand, construing "parties" in section 664.6 to encompass the litigants acting through their attorneys of record would *promote* the policy favoring settlement, because it would permit the enforcement of attorney-signed settlement agreements under section 664.6's summary procedures. I agree with real party in interest no satisfactory rationale can be advanced for carving out attorney-signed settlement agreements as a special case to which the statute does not apply.

For the foregoing reasons, I would conclude "parties," as used in section 664.6, includes the litigants acting through their duly authorized attorneys of record, as well as the litigants personally.