**CRANSHIRE CAPITAL, L.P., an Illinois Limited Partnership, Plaintiff—Appellee,**

**v.**

**CBTV–STAR, LW, INC., a Nevada corporation; Donna M. Guglielmo, Defendants,**

**and**

**Keystone Energy Services, Inc., a Minnesota corporation, Defendant—Appellant.**

No. 00–56778.

D.C. Nov. CV–99–00149–VAP.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 3, 2003.

Decided July 1, 2003.

Before REINHARDT, O'SCANNLAIN, and FISHER, Circuit Judges.

MEMORANDUM *

Keystone Energy Services, Inc. ("Keystone"), appeals from the district court's entry of judgment against it pursuant to the terms of a settlement agreement allegedly entered into by Keystone and Cranshire Capital, L.P. ("Cranshire"). Keystone contends that (1) the district court lacked jurisdiction to enter the judgment; (2) the settlement agreement was invalid under California law; and (3) the district court imposed terms beyond those called for in the settlement. The facts and prior

proceedings are known to the parties, and are restated herein only as necessary.

**I**

In *Kokkonen v. Guardian Life Insurance Company of America,* the Supreme Court held that "[e]nforcement of … [a] settlement agreement, … whether through award of damages or decree of specific performance, is more than just a continuation or renewal of the dismissed suit, and hence requires its own basis for jurisdiction." 511 U.S. 375, 378, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). The mere existence of an "agreement that has as part of its consideration the dismissal of a case before a federal court," *id.* at 380, 114 S.Ct. 1673, without more, is not a sufficient basis for a federal court's jurisdiction. The Court identified circumstances in which a federal court would have jurisdiction to enforce the terms of a settlement agreement:

> The situation would be quite different if the parties' obligation to comply with the terms of the settlement agreement had been made part of the order of dismissal—either by separate provision (such as a provision "retaining jurisdiction" over the settlement agreement) or by incorporating the terms of the settlement agreement in the order. In that event, a breach of the agreement would be a violation of the order, and ancillary jurisdiction to enforce the agreement would therefore exist.

*Id.* at 381, 114 S.Ct. 1673.

Keystone concedes that the district court's order in the present case includes the kind of "jurisdiction retaining" language required by the Court in *Kokkonen.* Keystone nevertheless contends that, because the district court retained jurisdic-

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

tion only for 120 days—and because the district court never modified its earlier order—the district court was powerless to enter judgment on September 6, outside of the 120–day period.[1]

The principle underlying the Court's holding in *Kokkonen* would appear to foreclose Keystone's argument. The Court emphasized that where, as here, a court expressly retains jurisdiction to enforce a settlement agreement, "a breach of the agreement would be a violation of the [dismissal] order, and ancillary jurisdiction to enforce the agreement would therefore exist." *Kokkonen*, 511 U.S. at 381, 114 S.Ct. 1673. Thus, by the Court's logic, when the district court expressly retained jurisdiction to enforce the settlement agreement in this case, it made "the parties' obligation to comply with the settlement agreement ... part of the order of dismissal." *Id.* The breach of the settlement agreement, therefore, constitutes a violation of the court's dismissal order and triggers the court's ancillary jurisdiction. In the present case, the court held a hearing on Cranshire's motion to enforce judgment at which Judge Phillips specifically concluded that the agreement wasn't performed. That conclusion, which took place within 120 days of the order dismissing the case, is sufficient under the Court's reasoning in *Kokkonen* to trigger the district court's ancillary jurisdiction to enforce the settlement agreement and therefore to enter judgment against Keystone.

## II

For the first time on appeal, Keystone contends that, under California law, the letter agreement was invalid and therefore unenforceable. The letter agreement specifically states that "[t]his letter agreement shall be binding and enforceable pursuant to Code of Civil Procedure section 664.6." The California Supreme Court has held that California Code of Civil Procedure § 664.6 requires that any settlement agreement be signed by the parties themselves, and not their attorneys. *See Levy v. Superior Court,* 10 Cal.4th 578, 41 Cal. Rptr.2d 878, 896 P.2d 171, 175 (1995). Keystone contends that because the agreement at issue here was signed by Cranshire's counsel—and not by Cranshire itself—the agreement is invalid.

As Cranshire points out, however, Keystone affirmatively stated—in both its papers and at oral argument below—that the letter agreement was a valid and binding agreement. *See* Appellant's Excerpts of Record at 33 ("Keystone and Saxby ... do not oppose entry of a judgment pursuant to the terms of the parties' actual settlement agreement."), 35 (referring to "THE EXECUTED 'LETTER AGREEMENT' "), and 59 ("We certainly agree the judgment may be entered on the letter agreement.").

In *Marx v. Loral Corporation,* 87 F.3d 1049 (9th Cir.1996), we were faced with an appellant who had argued to the trial court that its claim "is not an equitable estoppel claim" but who nevertheless argued on appeal that "equitable estoppel principles are at issue in this case." *Id.* at 1056. We held that "[t]his about-face by

---

1. There is some disagreement as to which of the three dates appearing on the district court's order of dismissal triggered the 120–day period: Judge Phillips' handwritten entry of April 18 in the "Dated" line of the order, the clerk's stamp noting that the order was filed on April 20, or the clerk's stamp noting that the order was entered on April 26. The Federal Rules of Appellate Procedure which require a party to file a notice of appeal "within 30 days after the judgment or order appealed from is *entered,*" F.R.A.P. 4(a)(1) (emphasis added)—would appear to treat the last of these three dates as the relevant one. One hundred and twenty days from April 26, 2000, was August 24.

the plaintiffs is, at best, inventive, especially given their earlier disavowal of an equitable estoppel theory. As a result, the plaintiffs should be barred from asserting this theory on appeal." *Id.* Because Keystone is attempting to do precisely what the plaintiffs in *Marx* were prevented from doing—take a position on appeal that directly contradicts its position in the district court—we decline to entertain their challenge to the validity of the settlement agreement.

## III

Keystone's third and final claim is that the district court erroneously imposed obligations over and above those provided for in the letter agreement. *See Weddington Prods. v. Flick,* 60 Cal.App.4th 793, 810, 71 Cal.Rptr.2d 265 (1998) ("[N]othing in section 664.6 authorizes a judge to *create* the material terms of a settlement, as opposed to deciding what terms *the parties themselves* have previously agreed upon.") (emphasis in original). The agreement, according to Keystone, "contemplated that upon Keystone's payment of $150,000, the 500,000 shares of Keystone stock held by Cranshire would be returned to Keystone." Blue Br. at 15. By entering judgment in the amount of $250,000 and ordering Keystone to remove the restrictive legend on the shares in Cranshire's possession, Keystone argues, the district court "granted Cranshire a double recovery at Keystone's expense." *Id.* at 15, 71 Cal.Rptr.2d 265.

Keystone's claim is without merit. As an initial matter, it is worth noting that the underlying lawsuit settled by the letter agreement sought $400,000 in damages. In consideration for Cranshire's surrendering of its claims, Keystone agreed (1) to make a series of cash payments from Keystone totaling $75,000; (2) to remove the restrictive legend from the disputed shares so as to allow Cranshire to either

sell the stock back to Keystone at $0.15 per share (for a total price of $75,000) or sell it on the open market; and (3) to enter a stipulated judgment, enforceable if Keystone should fail to perform, providing for a $250,000 judgment, less any payments received under the agreement or value received for any shares sold. By failing to perform any of the terms of the agreement, Keystone exposed itself to the enforcement of the settlement terms, including the $250,000 judgment expressly provided for in the letter agreement. There is no double recovery because (1) the agreement specifically contemplates the $250,000 judgment and (2) the $250,000 judgment would be reduced by the amount of any payments received from Keystone or upon Cranshire's sale of the stock.

The district court's entry of judgment and its enforcement of the settlement agreement therefore must be
AFFIRMED.

REINHARDT, Circuit Judge, dissenting.

REINHARDT, Circuit Judge.

I dissent. Having expressly retained jurisdiction for 120 days only, the district court lost jurisdiction at the end of the 120–day period. It's as simple as that. The 120 days having expired, the district court had no jurisdiction to enter the judgment. For that reason, I do not reach the merits, although I note that the judgment that was entered (in excess of the court's jurisdiction) contained material errors in that it does not provide, as it should have, for any reduction or return of funds as a result of a sale of the stock by Cranshire, notwithstanding my colleagues' statement to the contrary.