Filed 9/14/21  Carter v. Mike Thompson Recreational Vehicles CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JAMES M. CARTER, | |
| Plaintiff and Appellant, | G058205 |
| v. | (Super. Ct. No. 30-2016-00876571) |
| MIKE THOMPSON RECREATIONAL VEHICLES, | O P I N I O N |
| Defendant and Respondent. | |

Appeal from an order of the Superior Court of Orange County, Walter P. Schwarm, Judge.  Affirmed in part, reversed in part and remanded with instructions.

Law Offices of Jim O. Whitworth and Jim O. Whitworth for Plaintiff and Appellant.

Sutton & Murphy and Thomas M. Murphy; Schlichter & Shonack, Kurt A. Schlichter and Steven C. Shonack for Defendant and Respondent.

## INTRODUCTION

Appellant James Carter was dissatisfied with a vehicle he purchased. After bringing consumer warranty claims against two entity defendants – one of which manufactured the vehicle, and the other of which sold him the vehicle – Carter and the two defendants entered into a written, integrated settlement agreement.

Under the Song-Beverly Consumer Warranty Act (Civ. Code, §1790 et seq.) (Song-Beverly Act), prevailing buyers must be permitted to recover attorney fees and costs. (See Civ. Code, §1794, subd. (d).) However, by the explicit terms of the parties' settlement agreement, and due to an indemnity agreement between the defendants, only one of the two defendants was responsible to pay said fees and costs. In an unfortunate twist of fate, this defendant entered into receivership in its native Canada shortly after Carter obtained a ruling fixing the amount of attorney fees it would need to pay him. Now, Carter seeks to hold the *other* defendant responsible for those fees. We hold he cannot do this and affirm the other defendant's dismissal. But we reverse and remand the trial court's dismissal of the action as against the responsible defendant so the attorney fee award against it may be reduced to judgment.

## FACTS

In 2012, Carter purchased a Roadtrek recreational vehicle manufactured by Edwin Hymer Group North America, Inc. (EHGNA) from respondent Mike Thompson Recreational Vehicles, a dealer (Thompson). He experienced various issues with the vehicle and in September 2016, he filed a complaint against EHGNA[1] and Thompson, amongst others, for violations of the Song-Beverly Act. The first cause of action for breach of express warranty was against the manufacturers and the second cause of action for breach of implied warranty was against all defendants, including Thompson.

---

[1] Carter originally named Roadtrek Adventures, Inc. as a defendant in his complaint. However, EHGNA accepted service of the summons on behalf of Roadtrek Adventures, Inc., claiming it was erroneously sued in that name.

A notice of settlement was filed and the parties entered into a written settlement agreement. In exchange for the return of the vehicle and a request for dismissal with prejudice of the entire case against all defendants, appellant was to receive from "defendants" a check for a specified sum as well as "[p]ayment of attorneys' fees and costs as determined by the Court pursuant to Section 5" of the agreement. Section 5 provided "[a]s further consideration for the settlement," EHGNA would pay Carter and his counsel "reasonably incurred attorneys' fees and costs incurred in the prosecution of this lawsuit as they are agreed to be the prevailing party." Carter was to bring a motion for attorney fees as a prevailing party in order to fix the amount of fees owed.

Once it was notified of the settlement, the trial court set an order to show cause regarding dismissal which was continued a number of times, finally to August 31, 2018. The court advised the parties it would dismiss the entire action with prejudice if there were no appearances at the order to show cause hearing. A few weeks prior to the hearing, respondents and EHGNA, jointly represented throughout the proceedings, substituted in new defense counsel. The court was concerned that dismissing the case would cut off its jurisdiction to hear appellant's fee motion, and so it scheduled a case management conference for November 6, 2018, intending to hear the fee motion on the same date.

Appellant filed the fee motion on November 6 itself, and set it for hearing on January 22, 2019. The notice of motion sought fees based on actual time expended under Civil Code section 1794, subdivision (d) "and as agreed to by [EHGNA] and" himself. However, appellant's brief focused on the statute's edict permitting a prevailing plaintiff to recover actual fees; there was no discussion of who was required to pay them.[2]

---

[2] Appellant sought $160,798 in fees.

Both EHGNA and respondent filed a joint opposition to appellant's fee motion.  They argued that, under Civil Code section 1794, subdivision (d), appellant was only entitled to actual time expended to the extent the attorney fees were reasonably incurred.

The trial court heard the fee motion on January 22, 2019.  It awarded appellant $112,698 pursuant to Civil Code section 1794, subdivision (d).  Another order to show cause hearing regarding dismissal was set for March 8, 2019, but it was continued to March 15.

EHGNA's counsel requested it issue the check to pay appellant's fee award, but in February 2019, EHGNA went into receivership in Canada.  On March 15, appellant had the court clerk issue a writ of execution against Thompson, seeking to collect on the fee award.  A few weeks later, Thompson filed an ex parte application to recall and quash the writ of execution, arguing EHGNA, not it, was responsible under the settlement agreement for paying appellant's fees.

Relying on the collective definition of "defendants" in the settlement agreement, appellant opposed the ex parte application on the ground that it constituted an untimely and meritless application for the court to reconsider its ruling on the fee motion.  Respondent's ex parte application was heard on March 29, 2019.  The court granted the application and quashed the writ of execution against Thompson, finding only EHGNA was obligated to pay fees under the settlement agreement.

Because it owed no further amounts to appellant, respondent filed a motion to enforce the parties' settlement, seeking dismissal of the case as against it.  In opposition, appellant for the first time argued the settlement agreement was unenforceable because it had not been signed by an authorized principal of Thompson, and because it was void or voidable under the Song-Beverly Act.  In reply, Thompson pointed out EHGNA had agreed to defend and indemnify it against appellant's claims, and appellant had been paid the primary settlement already.  Thompson also attached a

4

declaration from its general manager, Mark Rosenbaum, who had signed the settlement agreement, stating he had authority to do so.

The trial court granted the motion and also dismissed the entire action with prejudice. Carter appeals the dismissal.

## DISCUSSION

Carter contends the trial court erred in two respects. First, he claims the settlement agreement was not enforceable under Code of Civil Procedure section 664.6, for several reasons we shall take up below. Second, he contends the trial court improperly reconsidered and modified its attorney fee ruling by quashing his writ of execution against Thompson. Because we conclude Thompson was not responsible to pay Carter's attorney fees, we need not address the second issue.

## I. Standard of Review

Our analysis of the first issue employs a mixed standard of review. "'The trial court's factual findings on a motion to enforce a settlement pursuant to [Code of Civil Procedure] section 664.6 "are subject to limited appellate review and will not be disturbed if supported by substantial evidence."' (*Osumi v. Sutton* (2007) 151 Cal.App.4th 1355, 1360.) 'Consistent with the venerable substantial evidence standard of review, and with our policy favoring settlements, we resolve all evidentiary conflicts and draw all reasonable inferences to support the trial court's finding that these parties entered into an enforceable settlement agreement and its order enforcing that agreement.' (*Ibid.*)" (*J.B.B. Investment Partners Ltd. v. Fair* (2014) 232 Cal.App.4th 974, 984.) However, in determining whether Thompson's motion satisfied the statute's requirements, our review is de novo since the question is one of law. (*Ibid.*)

## II. Enforceability of Settlement Agreement

Carter's attack on the enforceability of the settlement agreement is threefold. First, he argues Rosenbaum's signature did not meet Code of Civil Procedure section 664.6's requirement that a "party" sign the settlement agreement. Second, he

5

claims the agreement itself was uncertain on several material terms.  Third, he contends enforcement of the agreement, as a practical matter, resulted in an unlawful waiver of his statutory right to attorney fees and costs as a prevailing plaintiff under the Song-Beverly Act.

### A.    Signature of a Party

At all times relevant to this case,[3] Code of Civil Procedure section 664.6 stated as follows: "If parties to pending litigation stipulate, in a writing signed by the parties outside the presence of the court or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement.  If requested by the parties, the court may retain jurisdiction over the parties to enforce the settlement until performance in full of the terms of the settlement." The statutory language does not clarify who qualifies as "the parties."[4]   However, prior to the passage of the recent amendments, the California Supreme Court held a settlement agreement must be signed by a litigant, and not a litigant's attorney, in order to be enforceable under the statute.  (*Levy v. Superior Court* (1995) 10 Cal.4th 578, 586 (*Levy*).)

Relying on *Levy* and *Gauss v. GAF Corp.* (2002) 103 Cal.App.4th 1110 (*Gauss*), Carter urges that Rosenbaum's signature on the settlement agreement was insufficient, because he was an agent for Thompson.  We believe Carter misapprehends the holdings of these cases.

*Gauss* purported to foreclose use of the Code of Civil Procedure section 664.6 procedure to "enforce a settlement agreement signed only by a party's agent." (*Gauss, supra,* 103 Cal.App.4th at p. 1121.)  But, as we suggested in *Provost v. Regents of University of California* (2011) 201 Cal.App.4th 1289 (*Provost*), *Gauss* does not

---

[3]    The Legislature passed amendments to Code of Civil Procedure section 664.6 which became effective on January 1, 2021, long after the trial court made its ruling on Thompson's motion to enforce settlement.

[4]    Amongst other things, the recent amendments added language permitting attorneys representing parties and agents of insurers to sign as a "party."  (Code Civ. Proc., § 664.6, subd. (b).)

6

require a corporate officer to sign the settlement agreement. (*Provost, supra*, 201 Cal.App.4th at p. 1296.) Rather, the *Gauss* court recognized the signature of an "authorized corporate representative" would be adequate under Code of Civil Procedure section 664.6. (*Gauss, supra,* 103 Cal.App.4th at p. 1120.) The signatory in *Gauss* was not such a representative, but rather a *completely separate nonprofit corporation* "established . . . to administer all aspects of . . . litigation of asbestos-related claims brought against" it and other similarly situated companies. (*Id.* at p. 1113.)

We believe the present circumstance is more in line with *Provost*, in which we held sufficient the signature of an attorney *employed in the defendant's office of the general counsel*. (*Provost, supra*, 201 Cal.App.4th at p. 1296.) The appellant in *Provost* also relied on *Gauss* and *Levy* to argue the in-house attorney's signature was lacking because she was not a corporate officer, but rather an employee appointed as party representative and authorized to sign the settlement agreement for the entity defendant. (*Id.* at pp. 1293, 1296-1297.) We found the appellant's litmus test too exacting, noting "the well-established rule that a corporation acts through its agents and employees." (*Id.* at p. 1296.) Because the employee signatory was properly authorized by the company to undertake settlement, she "was in as good or better a position as anyone to best protect [the defendant's] interests in the settlement," which was a main concern for the California Supreme Court in *Levy*.[5] (*Provost, supra*, 201 Cal.App.4th at p. 1297.)

We further theorized in *Provost* that an authorized corporate representative could lie anywhere in the corporate hierarchy between an employee and upper-echelon management based on the facts of the case: "Our decision should not be extended to apply to any employee of a corporation in any circumstance; obviously some would lack

---

[5] We observed that *Levy* required a litigant's signature because "'[t]he litigants' direct participation tends to ensure that the settlement is the result of their mature reflection and deliberate assent. This protects the parties against hasty and improvident settlement agreements by impressing upon them the seriousness and finality of the decision to settle, and minimizes the possibility of conflicting interpretations of the settlement. [Citations.] It also protects parties from impairment of their substantial rights without their knowledge and consent. [Citation.]'" (*Provost, supra*, 201 Cal.App.4th at p. 1297, quoting *Levy, supra*, 10 Cal.4th at p. 585, fn. omitted.)

7

the appropriate qualifications. On the other hand holding that an officer, as opposed to another designated and qualified employee, must sign a settlement for it to be enforceable under [Code of Civil Procedure] section 664.6 makes no practical sense. One can hardly expect an officer of Ford Motor Company or Wal-Mart Stores, Inc., to participate in every settlement of every case . . . to be eligible to take advantage of the mechanism provided by [Code of Civil Procedure] section 664.6." (*Provost, supra,* 201 Cal.App.4th at p. 1297.)

Here, Rosenbaum signed the agreement as "GM" of Thompson. He submitted a declaration stating he was the General Manager of Thompson and had express authority to sign the agreement on Thompson's behalf. With this uncontroverted evidence, the trial court reasonably concluded Rosenbaum was an appropriately "designated and qualified employee[.]" (*Provost*, *supra*, 201 Cal.App.4th at p. 1297.)

### B.          Uncertainty or Missing Material Terms

Carter next argues there was no enforceable contract because the settlement agreement was uncertain as to the amount of attorney fees to be paid; and because there was no meeting of the minds on who was liable to pay them. We start with the former issue.

### 1.          Uncertainty

While the amount of attorney fees was not explicitly fixed in the settlement agreement, the document clearly contemplated court involvement in "facilitat[ing]" payment of the fees by way of a motion for prevailing party attorney fees and costs. As a practical matter, then, there was no need to fix the amount of fees in the agreement itself in order for the parties to be assured Carter would be awarded a just amount. Whether he proceeded through trial and obtained attorney fees pursuant to posttrial motion, or simply filed a motion by the terms of the settlement agreement, the trial court's judgment as to the appropriate amount of fees was going to ultimately be dispositive. As such, the amount of fees was not essential to form the contract.

8

Carter relies on *Weddington Productions, Inc. v. Flick* (1998) 60 Cal.App.4th 793 (*Weddington*) to argue a settlement agreement may not be enforced under Code of Civil Procedure section 664.6 if its terms are uncertain. But *Weddington* was a very different case. There was no fully integrated, executed settlement agreement between the parties as there was here. Rather, the parties had reached the point of a "Deal Point Memorandum" which the mediator in an alternative dispute resolution forum forcibly imposed. (*Id.* at p. 799.) The court in *Weddington* observed that a contract was certain enough for enforcement if it provided "a basis for determining what obligations the parties have agreed to" so that a breach of those obligations could be ascertained. (*Id.* at p. 811.) And it would be uncertain if "'an essential element is reserved for the future agreement of both parties' . . . . [Citation.]" (*Id.* at p. 812.)

Here, there *was* a basis for determining if defendants had breached the settlement agreement – one could simply look at the trial court's ruling on the motion for attorney fees and see the amount owed. The amount was not reserved for the parties' future agreement – it was reserved for the court's resolution. Thus, we hold the lack of an explicit amount of attorney fees did not render the agreement uncertain.

## 2. Party Responsible for Fees

Carter fares no better on the second issue. He says his understanding was always for both EHGNA and Thompson to be liable. For this, he points to the preamble of the agreement, which defines EHGNA and Thompson collectively as "defendants," and goes on to state: "Hereinafter, plaintiff and defendants may be referred to collectively as the 'parties' or individually as a 'party.'" He further claims defense counsel assured him either defendant would be liable for the fees, even though EHGNA had agreed to indemnify Thompson in the litigation. He points to an email from the defendants' former counsel stating both defendants had "bought their peace" through the litigation.

These arguments are unavailing because the attorney fee provision of the agreement was crystal clear. It required "defendant [EHGNA] . . . to pay plaintiff and his

9

counsel" their fees. It specifically identified EHGNA as the defendant responsible for them. Thompson was not among the parties designated to pay fees, nor was the collective term "defendants" from the preamble used. Where the contractual language is clear and explicit and does not involve an absurdity, it governs interpretation of the contract. (See Civ. Code, § 1638.) The contract clearly required EHGNA, not Thompson, to pay Carter's attorney fees.

### C.  Waiver of Rights under the Song-Beverly Act

Carter's third argument against enforceability is based on the following provision in the Song-Beverly Act: "Any waiver by the buyer of consumer goods of the provisions of this chapter, except as expressly provided in this chapter, shall be deemed contrary to public policy and shall be unenforceable and void." (Civ. Code, § 1790.1.) The law contains an attorney fee provision favoring prevailing consumers: "If the buyer prevails in an action under this section, the buyer shall be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses, including attorney's fees based on actual time expended, determined by the court to have been reasonably incurred by the buyer in connection with the commencement and prosecution of such action." (Civ. Code, § 1794, subd. (d).) Because prevailing buyers are entitled to reasonable attorney fees, Carter believes it would be unlawful to allow Thompson to escape liability for fees despite the settlement agreement's language.

Again, we must disagree. Civil Code section 1794, subdivision (d) only requires the court to "allow" him to recover attorney fees as part of the judgment. It does not require all defendants to be liable for such fees. And it does not preclude one defendant from indemnifying another for payment of them. Here, the settlement agreement required EHGNA to pay fees and the trial court entered an attorney fee award against EHGNA. Carter was never forced to waive his right to fees under the Song-Beverly Act.

10

Carter claims EHGNA's receivership necessarily means he will not recover his attorney fees. First and foremost, he has not tried. When the trial court suggested he could file a claim as a creditor against EHGNA in the Canadian proceedings, his counsel flippantly dismissed the notion: "We don't have to . . . . We are right here in California with rights in California . . . . [¶] We don't know what is going on in Canada." We suggest counsel find out. In any case, EHGNA's bankruptcy does not allow us or the trial court to modify the parties' agreement to make Thompson responsible for attorney fees in EHGNA's stead.[6]

Carter also argues upholding Thompson's dismissal would allow it to escape liability without having paid any consideration, because Thompson has paid nothing out of its own pocket. But were dismissals contingent on each defendant paying sums out of pocket, the concept of indemnity would be effectively eviscerated. From a settling plaintiff's point of view, it does not matter who pays, so long as the plaintiff is paid. In this case, Carter agreed the defendants (plural) would be responsible to pay the settlement check and EHGNA would be responsible to pay the attorney fees. If he had not received the settlement check, he could have pursued both EHGNA and Thompson for same. But he received it. Thompson's role in the settlement was complete at that point.

On one point, however, Carter is correct: the dismissal of the entire case at this juncture cuts against the Song-Beverly Act's fee statute. The trial court must "allow" the prevailing buyer to recover his attorney fees. The settlement agreement stated Carter would file a request for dismissal with prejudice in exchange for both the check and "[p]ayment of attorneys' fees and costs as determined by the Court[.]" Thus, Carter is

---

[6] Because we hold Thompson was not liable for the attorney fees, it follows that Carter was not entitled to a writ of execution to recover those fees from Thompson, thus rendering Carter's second argument on appeal moot.

11

not obligated to dismiss the case until the attorney fees are paid by EHGNA. They have not been paid.

The trial court's rationale in dismissing the entire case was based on California Rules of Court, rule 3.1385, which requires it to "dismiss the entire case 45 days after it receives notice of settlement unless good cause is shown why the case should not be dismissed." (*Id*., subd. (b).) Granted, Carter had filed his notice of settlement on March 12, 2018. He had not filed a request to obtain more time to complete the settlement, as he could have done under subdivision (e) of the rule. The trial court was understandably perplexed as to why the case remained in its inventory well into 2019.

But by the time it heard Thompson's motion to quash the writ of execution, the trial court had become aware the attorney fee piece of the settlement had not been consummated. Nor had Carter's attorney fee award against EHGNA been reduced to a judgment which he could then take to the Canadian court to file a creditor's claim. Indeed, in its order granting the motion to quash writ of execution, the trial court opined that the attorney fee ruling in Carter's favor was not an enforceable money judgment. Thus, it had been shown good cause why it should not dismiss the entire case yet. Such a dismissal would leave Carter holding the bag with no recourse against EHGNA for payment of his prevailing buyer fees. This result violated the Song-Beverly Act fee statute.

## DISPOSITION

The court's dismissal of Thompson is affirmed. Its dismissal of the entire action as it pertains to EHGNA is reversed and remanded with instructions to enter

12

judgment against EHGNA for $112,698, representing attorney fees owed to appellant.

Thompson is to recover its costs on appeal.


BEDSWORTH, J.

WE CONCUR:


O'LEARY, P. J.


GOETHALS, J.