Filed 5/30/24

**CERTIFIED FOR PARTIAL PUBLICATION**[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| EAGLE FIRE AND WATER RESTORATION, INC., | F086052 |
| Plaintiff, Cross-defendant and Appellant, | (Super. Ct. No. VCU285656) |
| v. | |
| CITY OF DINUBA, | **OPINION** |
| Defendant, Cross-complainant and Respondent. | |

APPEAL from a judgment of the Superior Court of Tulare County. Bret D. Hillman, Judge.

Law Office of Kathleen P. Clack and Kathleen P. Clack for Plaintiff, Cross-defendant and Appellant.

Coleman & Horowitt, David J. Weiland and Jennifer T. Poochigian for Defendant, Cross-complainant and Respondent.

-ooOoo-

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part III. of the Discussion.

This litigation arises out of a construction project involving appellant Eagle Fire and Water Restoration, Inc. (Eagle) and respondent City of Dinuba (the City). Eagle and the City reached an oral settlement on the record, but a dispute over the scope of the claims settled arose before the City dismissed its cross-complaint against Eagle. To resolve that dispute, the City filed a motion under Code of Civil Procedure section 664.6[1] to enforce the settlement agreement. The trial court granted the motion and filed a judgment dismissing both Eagle's complaint and the City's cross-complaint with prejudice.

Eagle appealed, contending that (1) the trial court could not enforce the purported settlement because the court did not properly retain jurisdiction under section 664.6 over the complaint and defendant Jason Watts (Watts) after Eagle voluntarily dismissed its complaint; (2) the purported settlement agreement failed due to uncertainty; (3) the court made improper factual determinations in the absence of jurisdiction; and (4) the court misinterpreted the settlement agreement when it found claims not pleaded in Eagle's complaint were released.

We conclude the trial court had subject matter jurisdiction and personal jurisdiction over Eagle and the City when it enforced the settlement because the City's cross-complaint had not been dismissed and, therefore, this case was "pending litigation" for purposes of section 664.6, subdivision (a)'s first sentence. As a result, the subdivision's second sentence addressing the retention of jurisdiction did not apply to the facts of this case. Also, the court did not need personal jurisdiction over Watts because the judgment did not require Watts to do anything. With respect to the existence and scope of an enforceable settlement agreement, substantial evidence supports the trial court's findings that an oral settlement agreement was formed and that the agreement

---

[1]     Subsequent undesignated statutory references are to the Code of Civil Procedure.

resolved all claims arising from the construction project, whether or not included in the parties' pleadings.

We therefore affirm the order granting the motion and the judgment enforcing settlement.

## FACTS AND PROCEEDINGS

Eagle was the lowest bidder on a project to reroof the City's police station and courthouse building. The value of the contract was approximately $500,000. Before completion of the project, a rainstorm caused significant water and flooding damage to the interior of the building. The City incurred over $330,000 in clean up and repair costs. The City believed Eagle was responsible for the water and flooding damage and withheld approximately $319,000 from Eagle as an offset. This litigation ensued.

In January 2021, Eagle filed a complaint in the Tulare County Superior Court against the City and its engineer Watts, which the court assigned case No. VCU285656 (Case VCU285656). Eagle's third amended complaint, its operative pleading, alleged causes of action for breach of the construction contract against the City, negligence against the City and Watts, and negligent misrepresentation against Watts. The City filed a cross-complaint against Eagle, alleging Eagle did not perform the job in a workmanlike manner, failed to adequately cover the roof with protective sheeting, failed to ensure the roof drains were not clogged, and failed to procure proper insurance coverage. Watts also filed a cross-complaint against Eagle, alleging causes of action for breach of contract and indemnity.

In July 2022, the trial court granted Watts's motion for summary judgment on Eagle's claims against him. Eagle filed a timely appeal (the Watts Appeal), which this court assigned case No. F084685 and stayed pending a decision in this matter. Watts voluntarily dismissed his cross-complaint against Eagle without prejudice on November 4, 2022.

3.

On November 14, 2022, the City and Eagle appeared before the trial court for motions in limine and trial (November Hearing). In the course of the hearing, but before trial had commenced, Eagle's counsel moved unsuccessfully for a mistrial. She then informed the court that she would be immediately filing a request to dismiss the complaint without prejudice. After City's counsel stated they would be proceeding with the cross-complaint, the court recessed for lunch. Eagle's dismissal was filed during the lunch break. After the break, the parties informed the court that they had reached a settlement. The terms of the settlement were placed on the record and acknowledged by the attorneys, Eagle and the City. Eagle was represented by its president, Jack Elechyan, and the City was represented by its assistant city manager. The court ended the hearing by setting a case management conference in late January 2023, which gave the City enough time to have its council approve the settlement and then file a notice of settlement or dismissal.

On January 24, 2023, the City filed a notice of settlement stating the City "has approved the case settlement which was placed on the record in court on November 14, 2022." The same day, Eagle filed an objection and notice of nonsettlement asserting that the statement of the settlement agreement should be "changed to reflect only the basic enforceable concepts of mutual dismissals with prejudice."

At the January 26, 2023 case management conference, the parties' disagreement over the terms of the settlement was discussed. Eagle's counsel asserted that the transcript of the November Hearing did not include everything said and that, although her client agreed to certain things, "we thought we were agreeing to something a little bit different than as it came out in the transcript." The trial court ended the conference by recognizing a disagreement existed, stating there was nothing before it on which it could rule, and informing the parties an order to show cause would issue if the action was not dismissed within 120 days.

In February 2023, the City filed a motion to enforce settlement pursuant to section 664.6. Eagle opposed the motion.

On March 21, 2023, the trial court heard argument on the motion and took it under submission. Later that day, the court filed a seven-page document titled "RULING ON DEFENDANT'S MOTION TO ENFORCE SETTLEMENT" that contained the court's findings of fact and legal analysis, its order granting the City's motion, and the judgment entered pursuant to the terms of the settlement. For convenience, we refer to this combination of a statement of decision, order, and judgment as the "March Order." The court's finding regarding the formation and scope of the settlement agreement along with the terms of the judgment enforcing that agreement are set forth later in this opinion. (See pt. II.B.2., *post*.)

Eagle filed a timely appeal to challenge the existence and enforceability of the purported settlement. In November 2023, the City filed a motion asserting Eagle's appeal was frivolous and requesting its dismissal and monetary sanctions.

## DISCUSSION

### I. JURISDICTION TO ENFORCE A SETTLEMENT UNDER SECTION 664.6

#### A. Section 664.6

Section 664.6, subdivision (a) provides: "If parties to pending litigation stipulate, in a writing signed by the parties outside of the presence of the court or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement. If requested by the parties, the court may retain jurisdiction over the parties to enforce the settlement until performance in full of the terms of the settlement."

Section 664.6 provides an expedited procedure for enforcing the parties' settlement agreement and, as a result, a party need not resort to less efficient procedures, such as filing a new lawsuit for specific enforcement of the settlement contract.

5.

(*Weddington Productions, Inc. v. Flick* (1998) 60 Cal.App.4th 793, 809 (*Weddington*); see *Gorman v. Holte* (1985) 164 Cal.App.3d 984, 989 [ways to enforce an oral settlement agreement].)  Among other things, "[s]ection 664.6 generally allows a court to enter judgment pursuant to a settlement agreement despite the dismissal of the complaint, which ordinarily deprives the court of continuing jurisdiction."  (*Howeth v. Coffelt* (2017) 18 Cal.App.5th 126, 134.)

B.    Retention of Jurisdiction Not Required in This Case

We begin with Eagle's contention that a section 664.6 motion could not be used to enforce the settlement agreement because there was no express retention of jurisdiction. Eagle bases this contention on (1) the fact that it dismissed its complaint before the settlement agreement was put on the record at the November Hearing and (2) the absence of an explicit statement by the parties or the court that jurisdiction to enforce the agreement was retained pursuant to section 664.6.  The City contends a retention of jurisdiction was unnecessary because its cross-complaint was pending and, thus, the trial court had jurisdiction over the parties and subject matter of the litigation at both the November Hearing and the March 21 hearing.

The parties' contentions present questions of law about the interpretation and application of section 664.6 to facts that are not in dispute—namely, the pleadings that were pending or had been dismissed when (1) the settlement was placed on the record at the November Hearing and (2) the March Order was filed.  In other words, the relevant procedural history is not disputed, only the legal effect of those proceedings on the court's jurisdiction.  The questions of law about the interpretation and application of section 664.6 are subject to independent review.  (*Machado v. Myers* (2019) 39 Cal.App.5th 779, 791 (*Machado*); *Critzer v. Enos* (2010) 187 Cal.App.4th 1242, 1253.) Due to " ' "its summary nature, strict compliance with the requirements of section 664.6

6.

is prerequisite to invoking the power of the court to impose a settlement agreement." ' " (*Critzer*, *supra*, at p. 1256.)

Before independently analyzing the questions of law presented, we set forth the trial court's conclusions about its jurisdiction to enforce the settlement. The court found Eagle and the City "stipulated orally before this Court, while the litigation was pending (and appears to be still pending) for settlement of this case on terms that included mutual dismissals with prejudice and a waiver of all appeal rights." The court determined the oral stipulation was made while it maintained jurisdiction over the matter and the parties despite Eagle's filing a dismissal without prejudice because there was a pending cross-complaint. Thus, the court concluded it did not need to expressly retain jurisdiction to enforce the oral settlement "as jurisdiction was never lost." We agree.

### 1.     *Textual Analysis*

The legal question about the trial court's jurisdiction can be framed in multiple ways. One way is based on the text of the first sentence of section 664.6, subdivision (a). Another way refers to text in the second sentence and the reasons the Legislature added that sentence to the statute.

As relevant here, the first sentence of section 664.6, subdivision (a) authorizes superior courts, upon a motion, to "enter judgment pursuant to the terms of the settlement," provided that the "parties to *pending litigation* stipulate . . . orally before the court, for settlement of the case, or part thereof." (Italics added.) Thus, the legal question presented by the parties' contentions can be phrased as whether Case VCU285656 was "pending litigation" when the parties orally agreed to a settlement on the record before the court at the November Hearing *and* when the court entered the judgment contained in the March Order. If the litigation was pending, then the first sentence's plain language empowered the court to enter judgment pursuant to an otherwise enforceable oral settlement agreement. (§ 664.6, subd. (a).)

7.

The second sentence of section 664.6, subdivision (a) states: "If requested by the parties, the court may retain jurisdiction over the parties to enforce the settlement until performance in full of the terms of the settlement." Accordingly, the legal question before us also can be phrased as whether the second sentence of section 664.6, subdivision (a) required the parties to specifically agree to the trial court retaining jurisdiction before that court would have the authority to place the parties' oral settlement on the record at the November Hearing and to enforce the settlement agreement in March 2023.

The second sentence does not state when it applies and when it does not apply. Consequently, we consider the Legislature's reasons for adding that sentence to the statute in 1993. (See Stats. 1993, ch. 768, § 1, p. 4260; see *Nolan v. City of Anaheim* (2004) 33 Cal.4th 335, 340 [when interpreting an ambiguous statute, a court may consider "the ostensible objects to be achieved, the evils to be remedied, [and] the legislative history"].) In *Wackeen v. Malis* (2002) 97 Cal.App.4th 429 (*Wackeen*), the court explained the sentence was the Legislature's solution to a problem arising in situations where the trial court lost jurisdiction over a case before all the terms of a settlement agreement were performed. (*Wackeen*, *supra*, at p. 439.) Under the earlier version of section 664.6, when the action was dismissed pursuant to a settlement, the court lost its jurisdiction and thus its ability to enforce a settlement agreement pursuant to a section 664.6 motion. (*Wackeen*, *supra*, at p. 439.) Based on the explanation in *Wackeen* and general principles defining a court's jurisdiction, we infer that the request to retain jurisdiction mentioned in the second sentence of section 664.6, subdivision (a) is necessary only when the motion to enforce the settlement is filed *after* the trial court has lost jurisdiction. We will not interpret the statute to require an express retention of jurisdiction in situations where the court's jurisdiction has yet to be terminated because such a requirement would be redundant. (See *Kleffman v. Vonage Holdings Corp.* (2010) 49 Cal.4th 334, 345 [courts avoid statutory interpretations that render provisions

8.

unnecessary or redundant]; *V Lions Farming, LLC v. County of Kern* (2024) 100 Cal.App.5th 412, 433 [interpretations creating a redundancy are disfavored].)

Applying our interpretation of section 664.6, subdivision (a) to the facts, we conclude Case VCU285656 was "pending litigation" at the time of both the November Hearing and the entry of the March Order. Case VCU285656 remained pending because the City's cross-complaint had not been dismissed. As a result, the trial court correctly determined its jurisdiction over the subject matter of that case and the parties had not been extinguished and there was no need to expressly retain jurisdiction. In sum, the first sentence of section 664.6, subdivision (a) authorized the court to enter the judgment contained in the March Order and the second sentence did not apply under the circumstances.

### 2. Eagle's Dismissal

Next, we explain in more detail why our legal conclusion that Case VCU285656 was "pending litigation" for purposes of section 664.6, subdivision (a) withstands Eagle's jurisdictional arguments that are based on its voluntary dismissal without prejudice during the lunch recess at the November Hearing. We acknowledge that the dismissal terminated the litigation on Eagle's complaint. (See *S. B. Beach Properties v. Berti* (2006) 39 Cal.4th 374, 380; cf. *Sanabria v. Embrey* (2001) 92 Cal.App.4th 422, 425 (*Sanabria*).) However, to the extent Eagle suggests that the voluntary dismissal of the complaint deprived the trial court of jurisdiction over Case VCU285656 in its entirety, we disagree.

"No dismissal of *an action* may be made or entered . . . where affirmative relief has been sought by the cross-complaint of a defendant . . . ." (§ 581, subd. (i), italics added.) As applied to the facts of this appeal, the statutory term "an action" means Case VCU285656 in its entirety. The dismissal of the complaint "does not affect the independent existence of the cross-complaint" (*Bertero v. National General Corp.* (1974)

9.

13 Cal.3d 43, 52), and "the cross-complaint may stand on its own" (*Electronic Equipment Express, Inc. v. Donald H. Seiler & Co.* (1981) 122 Cal.App.3d 834, 846).

We conclude the independent nature of the cross-complaint meant the court continued to maintain jurisdiction over the action and over Eagle. (See *Sanabria*, *supra*, 92 Cal.App.4th at p. 425.) Stated in terms of subject matter and personal jurisdiction, the pending cross-complaint gave the court subject matter jurisdiction over the disputes arising from the roofing project and Eagle's appearance as a cross-defendant gave the court personal jurisdiction over it. Consequently, the present circumstances are distinguishable from cases where a plaintiff's voluntary dismissal disposed of all pending claims and thus ended the trial court's "jurisdiction to enter further orders in the dismissed action." (*Wells v. Marina City Properties, Inc.* (1981) 29 Cal.3d 781, 784; see *Paniagua v. Orange County Fire Authority* (2007) 149 Cal.App.4th 83, 89.) As a result, Eagle's arguments about the jurisdictional effect of its voluntary dismissal without prejudice must be rejected. That voluntary dismissal affected Eagle's complaint only, did not resolve the City's cross-complaint, and could not resolve the entire "action." (§ 581, subd. (i); see *Bertero v. National General Corp.*, *supra*, 13 Cal.3d at p. 52.)

Returning to section 664.6's text, the trial court's authority (i.e., its jurisdiction) to enter a judgment dismissing Eagle's complaint with prejudice is plainly set forth in subdivision (a)'s first sentence. To complete our analysis of the jurisdictional issue, we assume for purposes of argument that our interpretation of section 664.6 conflicts with the statutes governing dismissals generally. To the extent that such a conflict exists, we conclude the more specific provision in section 664.6, subdivision (a) defining the court's authority takes precedence over the general statutes governing the court's postdismissal authority. (See *State Dept. of Public Health v. Superior Court* (2015) 60 Cal.4th 940, 960; see also § 1859 ["when a general and particular provision are inconsistent, the latter is paramount to the former"].)

10.

### 3. *Jurisdiction Over Watts*

Eagle notes that Watts dismissed his cross-complaint against it before the November Hearing and appears to argue that because the parties and Watts did not agree to the trial court retaining jurisdiction over Watts in accordance with section 664.6, the court lacked jurisdiction over Watts and, thus, could not order Eagle to drop the Watts Appeal. We conclude jurisdiction over Watts was not necessary.

First, as discussed above, the trial court had subject matter jurisdiction over disputes arising from the roofing project through the City's pending cross-complaint. Watts was involved in that project and, thus, the claims against him arose from that project. Therefore, Eagle's argument about jurisdiction over Watts fails to the extent it implies the court lacked subject matter jurisdiction to enter a judgment requiring Eagle to dismiss the Watts Appeal.

Second, to the extent Eagle contends the trial court lacked personal jurisdiction over Watts and the absence of personal jurisdiction over Watts somehow precluded Eagle from being bound by its agreement to dismiss the Watts Appeal, we reject that contention. The judgment entered did not direct Watts to perform any act or refrain from acting. Also, it did not purport to deprive him of any rights. Thus, personal jurisdiction over Watts was not necessary for the court to have the authority to enforce Eagle's covenant to dismiss its appeal against Watts.[2]

To summarize, we reject all Eagle's arguments about the lack of jurisdiction because Case VCU285656 was still pending and, despite Eagle's voluntary dismissal of its complaint, that pending action provided the trial court with subject matter and

---

[2]     Our rejection of Eagle's argument about jurisdiction over Watts does not resolve whether the provision in the settlement agreement requiring Eagle to dismiss the Watts Appeal is an enforceable obligation. That issue, which implicates the parties' freedom of contract and requires an application of the rules of law governing the formation and enforceability of contractual provisions, is addressed below in part II.D.3.

personal jurisdiction over Eagle and the City when the settlement was placed on the record and when the court entered a judgment enforcing the settlement.[3]

## II.    EXISTENCE AND TERMS OF THE SETTLEMENT

Having resolved the jurisdictional questions, we consider the issues relating to whether an enforceable settlement agreement was formed and, if so, what were its terms—that is, what was the scope of the settlement.  Because the agreement and its terms were part of an oral stipulation made before the court, we provide a brief historical overview of how section 664.6 has dealt with the enforcement of oral settlement agreements.  When section 664.6 was first enacted in 1981, it referred to oral stipulations "before the court."  (Stats. 1981, ch. 904, § 2, p. 3437.)  In 1993, the Legislature amended the statute to refer to stipulations made "orally on the record before the court."  (Stats. 1993, ch. 768, §1, p. 4260; see *Levy v. Superior Court* (1995) 10 Cal.4th 578, 580, fn. 1 (*Levy*).)  In 1994, the Legislature reversed course and deleted the phrase "on the record."  (Stats. 1994, ch. 587, § 7; see *Levy*, *supra*, at p. 580, fn. 1.)  Consequently, for the last 30 years, trial courts have been empowered to enforce oral settlements made before them even where there is no reporter's transcript of the oral proceedings.

### A.    The Reporter's Transcript

Here, we have a reporter's transcript of the November Hearing and that transcript is evidence of the trial court's, the parties' and the attorneys' oral statements.  Those oral statements are relevant to the formation and terms of any settlement contract.

Eagle has raised issues about the reporter's transcript.  In the trial court, Eagle argued the transcript did not contain everything said at the November Hearing.  On

---

[3]    We have addressed the court's jurisdiction at both points in time because of the arguments presented by the parties.  We do not imply that a trial court with jurisdiction— either continuing or retained—when the judgment enforcing the settlement is entered, also *must* have had subject matter jurisdiction and personal jurisdiction over every party to the settlement agreement when the oral stipulation was made.

12.

appeal, Eagles states it "consistently and repeatedly objected to use of the reporter's transcript as the basis of a settlement agreement because dispositive terms were missing, which if they had been typed into the transcript, would have given meaning to [Eagle's] and [its] counsel's intent and understanding of settlement terms."  Based on the claimed omissions, Eagle contends the settlement agreement is uncertain and unenforceable.  Eagle also asserts the trial court could have ordered a review of the reporter's transcript for accuracy based on the audio tape of the hearing, but did not.  This assertion suggests the court had a sua sponte duty to initiate procedures to correct purported omissions or errors in the transcript.

The City contends the record, including the transcript, unequivocally documents the understanding of the parties and their counsel of the settlement agreement.  Alternatively, the City contends Eagle is barred from challenging the transcript because Eagle did not contest the transcript's accuracy by offering a declaration of its principal (he attended the November Hearing) setting forth the claimed errors and omissions, and Eagle did not invoke the established procedures for correcting the record.

The transcript was prepared by a certified shorthand reporter who attended the November Hearing.  She certified that (1) the contents of the 47-page transcript of that hearing were taken down in stenographic shorthand writing and thereafter transcribed into typewriting and (2) the resulting "transcript constitutes a full, true, and correct transcript of said proceedings."  Pursuant to section 273, subdivision (a), the certified reporter's transcript "is prima facie evidence of that . . . proceeding."

Prima facie evidence is not conclusive evidence and, therefore, the presumption created by section 273, subdivision (a) may be rebutted.  (See Evid. Code, § 601 [presumptions are "either conclusive or rebuttable"].)  Consequently, it is possible under California law to demonstrate a certified reporter's transcript contains errors or omissions and have them corrected.  When the reporter's transcript in question is part of an appellate record, the procedure for correcting errors is set forth in California Rules of

13.

Court, rule 8.155(c). Specifically, a reviewing court, on its own motion or a party's motion, "may order the correction or certification of any part of the record" or "may order the superior court to settle disputes about omissions or errors in the record." (Cal. Rules of Court, rule 8.155(c)(1), (2).)

A practice guide addresses the timing of a party's motion to correct errors in the record by stating:

> "No express time limit for requesting a record correction is prescribed by the Rules of Court. As a practical matter, however, the request should be filed as soon as possible to avoid any potential waiver of issues or estoppel to obtain correction later on. [See *McLaughlin v. Walnut Properties, Inc.* (2004) 119 [Cal.App.]4th 293, 299, . . . fn. 6 (on appeal challenging summary adjudication order, appellants took no steps to correct record after it failed to include requested minute order granting summary adjudication)—'we could deem the issue waived']." (Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2023) ¶ 4:281, pp. 4-70 to 4-71.)

Here, Eagle made no attempt, by motion or otherwise, to correct the claimed omissions in the reporter's transcript of the November Hearing. As a result, the City relied on the transcript included in the appellate record to complete its respondent's brief. This reliance was reasonable because of the presumption set forth in section 273, subdivision (a). We reject Eagle's suggestion that the trial court is at fault for the claimed omissions because Eagle has cited no statute, case law, or secondary authority stating or implying that superior courts have a sua sponte obligation to correct a purported error or omission in a reporter's transcript.

Under these circumstances, we conclude Eagle is estopped from arguing the transcript omitted things said at the November Hearing. As the appellant, Eagle has the burden of providing an adequate record. (*Jameson v. Desta* (2018) 5 Cal.5th 594, 609.) In view of this burden, Eagle should have addressed the purported omission in the reporter's transcript by taking steps in the trial court to correct the transcript or by filing a motion under California Rules of Court, rule 8.155(c) with this court. (See generally

14.

*Doers v. Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 184–185, fn. 1 [unfair to allow the appellant to take advantage of an error on appeal when it could have been corrected].) Consequently, it would be inequitable to allow Eagle to forgo those remedial steps and then assert omissions in the reporter's transcript provide a basis for reversing the trial court's order and judgment.

B.    <u>Additional Background</u>

1.    *The November Hearing*

During the morning session of the November Hearing, Eagle's counsel informed the court that Eagle would be dismissing its complaint without prejudice, and the City's lawyer stated that it would be proceeding to trial on its cross-complaint. When the parties returned from the lunch recess, they informed the trial court that they had reached a settlement. The City's lawyer explained that the settlement was subject to approval by the City council and requested that the court continue the matter for council approval. After the court agreed to the continuance, the City's lawyer explained that "basically, all parties have agreed to dismiss all claims against each other with prejudice, and we've agreed to . . . waive any rights to further appeals in regard to this matter." Eagle's counsel then stated each side was to bear their own costs, and the City's lawyer agreed. The court then summarized: "So everybody's dismissing their complaints, their cross-complaints, their appeals, everybody's bearing their own costs and fees?" The City's lawyer agreed with the court. The court then asked the parties' representatives if they understood that there would be no trial and no right to appeal and asked if they understood that the settlement agreement would be a binding agreement enforceable by the court. Addressing Eagle's representative, the court framed the latter question as follows: "And do you understand by settling here and dismissing your complaint that it will be a binding agreement enforceable by the Court and that neither side may pursue the other?" The parties' representatives both responded affirmatively to the court's

15.

questions.  However, a question then arose about whether the settlement would require Eagle to dismiss the Watts Appeal.  The court took a recess for the parties to discuss the issue.

After the break, the City's lawyer informed the trial court that the parties were adding another term so that the settlement would be "dismissal with prejudice of all claims, [the City] against [Eagle] and [Eagle] against [the City] . . . , and it also includes a dismissal by [Eagle] of any appeals against Jason Watts."  Eagle's counsel then said, "Of this lawsuit, yes."  The court asked Eagle's representative if he understood the additional term, and he responded, "Yes, sir."  The City's lawyer then interrupted the court and the following exchange occurred:

"[THE CITY'S COUNSEL]:  And, I'm sorry, she said of this lawsuit.  It's related to any events that arised [*sic*] out of this incident.

"[EAGLE'S COUNSEL]:  No.

"[THE CITY'S COUNSEL]:  Oh, absolutely.

"[EAGLE'S COUNSEL]:  No.  You never said that before.  We're dismissing this lawsuit with prejudice, and you're dismissing that lawsuit with prejudice.

"[THE CITY'S COUNSEL]:  It's anything that arose out of --

"THE COURT:  If it's dismissed --

"[THE CITY'S COUNSEL]:  -- it's the subject.

"THE COURT:  It can't be brought back.

"[EAGLE'S COUNSEL]:  I can't bring it back.

"[EAGLE'S REPRESENTATIVE]:  Yes.  Yes.

"THE COURT:  The dismissals are all with prejudice on each side, and everyone is dismissing their appeals.  I mean, if --

"[THE CITY'S COUNSEL]:  Thank you.

16.

"[EAGLE'S COUNSEL]: Thank you.

"[EAGLE'S REPRESENTATIVE]: Yes. Thank you, Your Honor.

"THE COURT: Okay. Then I will go ahead and accept the settlement comprised by the freely and voluntarily entered into by all parties with the assistance of Coun[se]l."

The trial court subsequently stated that a minute order would issue stating that there was a settlement for "dismissal of all claims, all appeals, the suit with prejudice -- the countersuit with prejudice . . . this is pending Council approval . . . ." No objections were made to the proposed minute order. The hearing concluded with the court setting a status conference in January 2023.

### 2. The March Order

The trial judge who presided over the November Hearing also conducted the hearing on the City's motion to enforce settlement. The discussion in the March Order shows the trial court relied heavily on the reporter's transcript of the November Hearing in finding a settlement had occurred. In the March Order, the court described the terms and conditions of the settlement, stating:

> "On the one hand, [Eagle], having dismissed its operative complaint as to the City without prejudice, would dismiss its case with prejudice against the City and waive any right of appeal as against the City and Watts, as well as waive any recovery of fees and costs. Plaintiff's principal expressly, freely and voluntarily agreed to each of these terms. This included the discussion of whether the settlement included barring future claims that 'arise out of' the underlying incident in this case and agreement thereto by [Eagle's representative].

> "On the other hand, pending City Council approval, the City agreed to dismiss its cross-complaint against [Eagle] with prejudice, waive its right to appeal, and waive recovery of its fees and costs, via its assistant city manager."

Based on these findings about the existence and terms of the settlement agreement, the trial court "grant[ed] the motion and enter[ed] judgment pursuant to the terms of the settlement as follows":

17.

"a.    Plaintiff[] [Eagle's] operative complaint is dismissed with prejudice as to Defendant City of Dinuba;

"b.    Plaintiff waives recovery [of] costs and attorneys' fees incurred in this action;

"c.    Plaintiff waives the right to appeal any matter in this case as to any Defendant;

"d.    Defendant City of Dinuba's cross-complaint against Plaintiff is dismissed with prejudice;

"e.    Defendant City of Dinuba waives recovery [of] costs and attorneys' fees incurred in this action; and

"f.    Defendant City of Dinuba waives the right to appeal any matter in this case.

"g.    All pending appeals on each side are to be dismissed."

C.    Legal Principles Governing Section 664.6 Motions

When addressing a section 664.6 motion, the trial court must determine whether the parties entered into an enforceable settlement. (*Osumi v. Sutton* (2007) 151 Cal.App.4th 1355, 1360 (*Osumi*).) Phrased another way, "the court must determine whether the settlement agreement is valid and binding." (*Estate of Jones* (2022) 82 Cal.App.5th 948, 952.) This inquiry is governed by the legal principles applicable to the formation of contracts generally. (*Gorman v. Holte*, *supra*, 164 Cal.App.3d at p. 988; see *Ryan v. Garcia* (1994) 27 Cal.App.4th 1006, 1009 ["Generally, oral settlement agreements may be enforced in the same way oral contracts are enforced."].)

1.    *Contract Formation*

Under California law, the basic requirements for an enforceable contract are (1) parties capable of contracting, (2) the consent of those parties, (3) a lawful object, and (4) adequate consideration. (Civ. Code, § 1550.) The consent of the parties to a contract must be free, mutual, and communicated by each to the other. (Civ. Code, §§ 1565,

18.

1581.)  The existence of mutual consent is a question of fact.  (*Martinez v. BaronHR, Inc.* (2020) 51 Cal.App.5th 962, 966.)

Generally, mutual consent exists when "the parties all agree upon the same thing in the same sense."  (Civ. Code, § 1580; see *Sellers v. JustAnswer LLC* (2021) 73 Cal.App.5th 444, 460.)  Mutual consent is determined through an objective standard that examines the reasonable meaning of the parties' words and acts; it is not determined through silent unexpressed intentions.  (*Reigelsperger v. Siller* (2007) 40 Cal.4th 574, 579; *Sellers*, *supra*, at p. 460; see Civ. Code, § 1636 [interpreting contract to give effect to mutual intention of the parties].)

The concept of mutual consent can be characterized as embracing a range of specific issues, including whether the parties consented to all *material* settlement terms and whether those terms "were reasonably well defined and certain."  (*Estate of Jones*, *supra*, 82 Cal.App.5th at p. 952; see *Hines v. Lukes* (2008) 167 Cal.App.4th 1174, 1182 [settlement is enforceable only if the parties agreed to all material settlement terms].)  Whether a term is material—that is, essential to the existence of an enforceable agreement—"depends on its relative importance to the parties and whether its absence would make enforcing the remainder of the contract unfair to either party."  (*Copeland v. Baskin Robbins U.S.A.* (2002) 96 Cal.App.4th 1251, 1256, fn. 3.)

Whether the terms of the agreement are reasonably certain depends on whether "the terms 'provide a basis for determining the existence of a breach and for giving an appropriate remedy.' "  (*Alexander v. Codemasters Group Limited* (2002) 104 Cal.App.4th 129, 141 (*Codemasters*); see *ibid*. [formation of a contract requires certainty]; see also Civ. Code, § 1598 [where object of a contract is "so vaguely expressed as to be wholly unascertainable, the entire contract is void"]; 1 Witkin, Summary of Cal. Law (11th ed. 2017) Contracts, § 137, pp. 177–178 [requirement of certainty].)  Applying this contractual certainty requirement has been described as involving two inquiries:  " '[F]irst, did the parties intend to contract and second, is there a

reasonably certain basis for giving an appropriate remedy.' " (*Codemasters*, *supra*, at p. 141.) We note that, for purposes of contract law, certainty is not the same as unambiguous. The test for whether a term is ambiguous is whether it is reasonably susceptible to more than one interpretation. (See *Joseph v. City of Atwater* (2022) 74 Cal.App.5th 974, 982 ["threshold question when interpreting a written contract is whether the text is ambiguous—that is, reasonably susceptible to more than one interpretation"].) An ambiguity in an agreement is resolved through interpretation and the resulting meaning enforced. (See *Scheenstra v. California Dairies, Inc.* (2013) 213 Cal.App.4th 370, 389–390 [steps taken by trial court to identify and resolve contractual ambiguity].) In short, ambiguous agreements are enforceable and uncertain agreements are not.

### 2. Trial Court's Role

When determining whether a valid settlement contract was formed, the trial court acts as the trier of fact. (*Osumi*, *supra*, 151 Cal.App.4th at p. 1360; *Fiore v. Alvord* (1985) 182 Cal.App.3d 561, 565.) In that capacity, the trial judge may receive evidence such as oral testimony and declarations, consult his memory if he heard the settlement, determine disputed facts, apply governing law, and enter the terms of a settlement agreement as a judgment. (*Machado*, *supra*, 39 Cal.App.5th at p. 790; *Osumi*, *supra*, at p. 1360.) However, section 664.6 does not authorize judges to create the material terms of a settlement because creating new terms is different from deciding what terms the parties actually agreed upon. (*Machado*, *supra*, 39 Cal.App.5th at p. 790.)

In *In re Marriage of Assemi* (1994) 7 Cal.4th 896 (*Assemi*), the Supreme Court addressed the trial court's role by stating: "Past cases have established that, in ruling upon a section 664.6 motion for entry of judgment enforcing a settlement agreement, and in determining whether the parties entered into a binding settlement of all or part of a case, a trial court should consider whether (1) the material terms of the settlement were explicitly defined, (2) the supervising judicial officer questioned the parties regarding

their understanding of those terms, and (3) the parties expressly acknowledged their understanding of and agreement to be bound by those terms." (*Id*. at p. 911.)

The litigants' (as opposed to their attorneys') knowledge and express consent to an oral settlement is required because settlement is a serious step. (*Levy*, *supra*, 10 Cal.4th at p. 583; *Johnson v. Department of Corrections* (1995) 38 Cal.App.4th 1700, 1705–1706 [the plaintiff never voiced his acceptance of terms of oral settlement].) "The litigants' direct participation tends to ensure that the settlement is the result of their mature reflection and deliberate assent. This protects the parties against hasty and improvident settlement agreements by impressing upon them the seriousness and finality of the decision to settle, and *minimizes* the possibility of conflicting interpretations of the settlement. [Citations.] It also protects parties from impairment of their substantial rights without their knowledge and consent." (*Levy*, *supra*, at p. 585, fn. omitted, italics added.) We italicized the word "minimizes" because it indicates that section 664.6's requirements do not eliminate the possibility of disputes over the interpretation of a settlement agreement. "[W]hen issues relating to the binding nature or terms of the settlement are in dispute," section 664.6 empowers the trial court "to resolve these disputed issues and ultimately determine whether the parties reached a binding mutual accord as to the material terms." (*Assemi*, *supra*, 7 Cal.4th at p. 905.)

### 3. Standard of Review

The fundamental principles of appellate practice provide context for our determination of the standard of review applicable to specific determinations made by the trial court in reaching its decision. Appellate courts presume the trial court's judgment or order is correct and indulge all intendments and presumptions to support the judgment or order on matters as to which the record is silent. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 (*Denham*); *Fladeboe v. American Isuzu Motors Inc.* (2007) 150 Cal.App.4th 42, 58 (*Fladeboe*).) A logical implication of the presumption of correctness

is that the appellant bears the burden of affirmatively demonstrating error. (*Denham*, *supra*, at p. 564; *Fladeboe*, *supra*, at p. 58.)

A trial court's determination of whether the parties entered into a binding settlement for all or part of a case is reviewed for "whether the court's ruling is supported by substantial evidence." (*Assemi*, *supra*, 7 Cal.4th at p. 911; see *Critzer v. Enos*, *supra*, 187 Cal.App.4th at p. 1253.) This standard of review usually applies to a determination of whether an oral contract exists. (See *Carmel Development Co., Inc. v. Anderson* (2020) 48 Cal.App.5th 492, 518.) Thus, a trial court's factual findings concerning whether a settlement agreement explicitly defined the material terms, and whether the parties expressly acknowledged their understanding of and agreement to be bound by those material terms, are reviewed for substantial evidence. (*Assemi*, *supra*, 7 Cal.4th at p. 911.) Determinations other than factual findings "are reviewed de novo for errors of law." (*Weddington*, *supra*, 60 Cal.App.4th at p. 815.)

The substantial evidence standard is a deferential standard of review. (*Boermeester v. Carry* (2024) 100 Cal.App.5th 383, 394.) It requires appellate courts to view the entire record, resolve all evidentiary conflicts, and draw all reasonable inferences in support of a trial court's finding that an enforceable settlement exists and in support of the trial court's order enforcing the settlement. (See *Lee v. Amazon.com, Inc.* (2022) 76 Cal.App.5th 200, 222 (*Lee*); *J.B.B. Investment Partners, Ltd. v. Fair* (2014) 232 Cal.App.4th 974, 984; *Osumi*, *supra*, 151 Cal.App.4th at p. 1360.) "Substantial evidence," however, is not the same as "any evidence"; evidence is substantial if it is legally ponderable and thus, reasonable, credible, and of solid value. (*Daugherty v. City and County of San Francisco* (2018) 24 Cal.App.5th 928, 945; *Kuhn v. Department of General Services* (1994) 22 Cal.App.4th 1627, 1633.) Furthermore, circumstantial evidence may be substantial evidence sufficient to support a finding of fact when the inferences drawn from that evidence are logical and reasonable. (*Daugherty*, *supra*, at

p. 945.) Conversely, inferences based on speculation or conjecture do not meet the substantial evidence standard. (*Ibid.*)

### D. Analysis of Trial Court's Determinations

#### 1. *Contentions of the Parties*

Eagle argues that the parties never agreed to the terms of the settlement; it is unclear what the City's council actually approved; the record shows the parties struggled over the precise terms of the settlement; and the uncertainty as to the scope of the settlement was never resolved. In particular, Eagle contends the trial court incorrectly found that Eagle agreed to dismiss "all claims," including claims not pleaded, despite Eagle's statements at the hearing distinguishing between dismissing "all claims" and dismissing only the claims in the complaint.

The City contends that Eagle has not demonstrated error because the record shows (1) the parties reached a settlement, (2) the settlement terms were clear, and (3) Eagle's representative unequivocally agreed to all of the terms, including that all claims, not merely the pleaded state law claims, would be dismissed. The City argues the change of heart or confusion by Eagle's counsel does not undermine Eagle's representative's consent to the settlement terms. Thus, the City concludes that the trial court correctly found the existence and terms of the settlement and correctly enforced those terms.

#### 2. *Application of the Standard of Review*

The trial court found the parties entered into a binding and valid settlement agreement with terms providing for the dismissal of the complaint and cross-complaint with prejudice, the waiver of the right to appeal any matter in the case, the dismissal of all pending appeals (i.e., the Watts Appeal), and the waiver of the right to recover costs and attorney fees. There is no real dispute between the parties that these findings by the trial court are supported by substantial evidence. Consequently, a detailed analysis of the evidence supporting these findings is not necessary.

23.

The trial court also found the settlement terms barred all claims that arose out of the incident that formed the basis of the complaint and cross-complaint. The parties dispute whether this finding about the scope of the settlement is supported by substantial evidence.

Our initial inquiry asks whether this settlement term was material to the settlement agreement. A settlement covering all claims arising out of the incident would end all potential liability of both parties and give them peace in the disputes related to the roofing project. The statements made by the City's lawyer on the record constitute substantial evidence supporting the trial court's implied finding that the broad settlement term was a material term because the City's goal was a final resolution of all disputes arising from the roofing project, including claims not pleaded and the Watts Appeal. (See *Westlands Water Dist. v. All Persons Interested* (2023) 95 Cal.App.5th 98, 127 [explaining that an essential or material term is one that is significant to the parties].) This implied finding is supported further by Eagle's representative's affirmative answer to the court's question whether he understood that the settlement "will be a binding agreement enforceable by the Court and that *neither side may pursue the other*." (Italics added.) The phrase "pursue the other" indicates an intent to release all potential theories of recovery between the parties, not an intent to end the pursuit of only pleaded claims. In short, the City wanted peace—that is, an end to the war, not a limited truce.

Having determined the evidence supports the trial court's implied finding that the term was material, we next consider whether there was mutual assent to the term—that is, whether they agreed the settlement would encompass "all claims," and "all claims" meant all pending and "future claims that 'arise out of' the underlying incident." If there was no mutual assent to this material term, the other terms agreed upon would not form a binding and enforceable settlement agreement. (See *Cheema v. L.S. Trucking, Inc.* (2019) 39 Cal.App.5th 1142, 1149; *Weddington*, *supra*, 60 Cal.App.4th at p. 797.)

24.

The record reflects that the City's lawyer initially described the settlement, without objection, as all parties having "agreed to dismiss all claims against each other with prejudice, and . . . to waive any rights to further appeals in regard to this matter." When the attorneys recognized that they had not explicitly addressed the Watts Appeal, a recess was taken. After the recess, the City's lawyer repeated his earlier description and added that the settlement "includes a dismissal by [Eagle] of any appeals against Jason Watts." Eagle's counsel reacted to the second "all claims" description by attempting to limit "all claims" to the claims "[o]f this lawsuit." The City's lawyer expressly disagreed with the limitation "of this lawsuit" and stated that the dismissal was "related to any events that arised [*sic*] out of this incident." Eagle's counsel and the City's lawyer briefly argued over the scope of the dismissal. Thus, the issue presented is whether this disagreement was replaced with an agreement as to the scope of the settlement.

While the City's lawyer was speaking, the record shows that the court interrupted, and crosstalk ensued. If the crosstalk between the City's lawyer and the court is eliminated, the statement by the City's lawyer would read: "It's anything that arose out of . . . [¶] . . . [¶] . . . it's the subject." By again using the term "arose out of," the City's lawyer was plainly explaining the dismissal was for any claim that arose out of the incident that formed the basis of the complaint and cross-complaint.

From an alternate perspective, eliminating the crosstalk would make the trial court's statement read: "If it's dismissed . . . [¶] . . . [¶] . . . [i]t can't be brought back." Eagle's counsel then said, "I can't bring it back," and Eagle's representative said, "Yes. Yes," which appears to agree with the court's description. We recognize that it is possible, on the cold record, to interpret Eagle's counsel's statement as a question about whether unpleaded claims could be brought back to court and Eagle's representative's yeses as supporting counsel's question and indicating that he too was unsure about the status of unpleaded claims he was seeking an answer. The trial judge, who observed the demeanor of counsel and Eagle's representative and heard their intonation, did not

25.

interpret the statements that way. Instead of treating their responses as a question needing to be resolved, the court followed the representative's affirmative replies by stating: "The dismissals are all with prejudice on each side, and everyone is dismissing their appeals." The attorneys for each side and Eagle's representative then thanked the court, which indicates they too thought the issue had been resolved. The court then accepted the settlement and, later stated the minute order would reflect a "dismissal of all claims, all appeals, the suit with prejudice -- the countersuit with prejudice." Significantly, no party objected or sought further clarification with the court regarding "all claims."

When the trial court considered the City's motion to enforce the settlement in March 2023, the court had to interpret the foregoing exchange and relied on the reporter's transcript of the November Hearing. The court's March Order correctly stated the law prohibited it from creating material terms and required it to decide what terms the parties agreed upon. The court interpreted the exchange at the November Hearing, which included Eagle's representative's statement of "Yes. Yes" as Eagle's agreement that the dismissals would cover all claims arising out of the incident. We conclude substantial evidence supports the court's interpretation.

The trial court's interpretation is consistent with the City's prior description of a dismissal of "all claims," as well as the court's description of the intended minute order, which was to reflect both a "dismissal of all claims" and a dismissal of the suit and "countersuit" with prejudice. Identifying a dismissal of "all claims" as well as a dismissal of the suit and countersuit indicates that the settlement would resolve not only the filed complaint and cross-complaint—that is, the suit and countersuit—but also "all claims" arising out of the incident. This settlement term makes sense because it fully disposed of the pending claims and precluded further claims between Eagle and the City involving the roofing project.

When the trial court interjected itself, as the City's lawyer was again explaining that the dismissal was for all claims *arising out* of the incident, that part of the transcript is reasonably read as indicating that the court was attempting to explain that the claims *arising out of the incident* could no longer be brought to court, to which Eagle's representative responded affirmatively. To the extent the crosstalk set forth in the reporter's transcript is ambiguous, we infer the judge resolved any ambiguity by relying on his own memory of the November 2022 Hearing when he found that the term "all claims" was discussed, that Eagle's representative agreed "all claims" arising out of the incident were included, and that such claims could not be "brought back" in court. This inference is supported by the fact that the judge who issued the March Order was the judge who presided over the November 2022 Hearing and, as such, he was permitted to rely on his memory of the hearing when evaluating the motion to enforce the settlement. (*Osumi*, *supra*, 151 Cal.App.4th at p. 1360.) The applicable rules of appellate procedure require us to draw this inference because the March Order did not state, one way or the other, whether the judge relied on his memory and, when faced with silence, appellate courts must draw inferences favorable to the judgment. (*Denham*, *supra*, 2 Cal.3d at p. 564; *Fladeboe*, *supra*, 150 Cal.App.4th at p. 58.) Thus, we infer the trial court's resolution of the question of fact about Eagle's consent to the broad settlement term was based in part upon its recollection of the discussion of the settlement and its observations of Eagle's representative's demeanor and intonation when he said, "Yes. Yes." That recollection, when combined with the reporter's transcript, constitutes substantial evidence.

Next, we consider Eagle's argument regarding the lack of clarity about what settlement terms the City council actually approved. This argument is not developed with citations to relevant legal authority or reasoned argument. (See Cal. Rules of Court, rule 8.204(a)(1)(B).) For example, Eagle has not referred to the principles that determine when a municipality has ratified an employee's actions. (See generally *Rakestraw v.*

27.

*Rodrigues* (1972) 8 Cal.3d 67, 73 [ratification defined].) More specifically, Eagle has not shown the City's adoption of the assistant city manager's approval of the settlement agreement requires each term of the agreement to be stated with specificity in the council's motion or resolution manifesting the intent to ratify the agreement. As a result, the point is inadequately developed and thus, forfeited. (See *In re Tobacco Cases II* (2015) 240 Cal.App.4th 779, 808; *Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956.) Stated more directly, Eagle has not affirmatively demonstrated the trial court erred in accepting the City council's approval of the settlement. (See *Denham*, *supra*, 2 Cal.3d at p. 564 [the appellant bears the burden of affirmatively demonstrating error].) Also, on a related issue, we conclude the assistant city manager's agreement to the terms of the settlement strictly complies with the requirement that a party (as opposed to the party's counsel) approve the settlement "before the court." (§ 664.6, subd. (a).)

To summarize, under the deferential substantial evidence standard of review (*Lee*, *supra*, 76 Cal.App.5th at p. 222), we conclude the evidence adequately supports (1) the court's finding that an enforceable settlement contract existed and (2) the court's specific finding that Eagle assented to a dismissal of all claims arising out of the incident that formed the basis of its complaint. Eagle has not demonstrated these findings are erroneous due to a lack of evidentiary support or otherwise.

### 3. *Legality of Eagle Agreeing To Dismiss the Watts Appeal*

Eagle's claims against Watts were adjudicated in favor of Watts through a summary judgment motion, and Watts's cross-complaint against Eagle was resolved through his section 581 request for voluntary dismissal without prejudice. The settlement and judgment enforcing settlement did not purport to exercise any authority over Watts, such as compelling him to perform an act or prohibiting him from taking an action.

Instead, the settlement and judgment simply required Eagle to dismiss the Watts Appeal and, thus, attempted to confer a litigation benefit on Watts, a nonparty to the agreement.

Civil Code section 1559 provides: "A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it." It logically follows that California contract law allows parties to form a contract with a provision that benefits a third party and, furthermore, also allows a party to that contract to enforce a provision benefiting a third party.

To be enforceable, a contract provision must have a "lawful object." (Civ. Code, § 1550; see 1 Witkin, Summary of Cal. Law, *supra*, §§ 421–422, pp. 446–447 [illegal object and partial illegality].) Accordingly, we consider whether Eagle has demonstrated the provision requiring it to dismiss the Watts Appeal has an unlawful object. In this context, lawful means not conflicting with an express statute or public policy. (1 Witkin, Summary of Cal. Law, *supra*, § 421, p. 446.) Eagle has cited no statute and has identified no public policy that conflicts with its dismissal of the Watts Appeal. Indeed, because California has a strong public policy favoring the voluntary settlement of disputes (*Monster Energy Co. v. Schechter* (2019) 7 Cal.5th 781, 793), public policy supports the enforcement of a contractual provision in which the contracting parties agree that one of the parties will dismiss an appeal against a third person. Considering that Watts was the City's engineer on the roofing project and public entities have an obligation to defend and indemnify their employees (Gov. Code, §§ 825, 825.2), we detect nothing improper about the City's negotiating a dismissal of Eagle's appeal against Watts. Consequently, the term in the settlement agreement requiring Eagle to dismiss the Watts Appeal is enforceable.

III.    MOTION TO DISMISS AND REQUEST FOR SANCTIONS[*]

The City contends Eagle should be sanctioned for filing a frivolous appeal. An appeal is frivolous "when any reasonable attorney would agree that the appeal is totally

---

[*]    See footnote page 1, *ante.*

and completely without merit." (*Barrera v. Apple American Group LLC* (2023) 95 Cal.App.5th 63, 96.)  Although we have rejected Eagle's arguments and will affirm the judgment entered to enforce the settlement, those arguments cannot be characterized as totally and completely without merit.  In particular, the wording of section 664.6, subdivision (a) is not a model of clarity in describing how the two sentences relate to one another.  Although the first sentence clearly states it applies when the litigation is pending, the second sentence does not explicitly inform readers that the requirements for the retention of jurisdiction apply only when the litigation is no longer pending.  The interpretation set forth in part I.B.1. of this opinion recognizes the limited scope of the retention-of-jurisdiction provision based on inferences drawn from "the ostensible objects to be achieved" (*Nolan v. City of Anaheim*, *supra*, 33 Cal.4th at p. 340) by the amendment that added the second sentence.  (See *Wackeen*, *supra*, 97 Cal.App.4th at p. 439.)  An objectively reasonable attorney would recognize contrary inferences could be drawn even though they did not ultimately carry the day.  Therefore, we deny the City's motion to dismiss and request for sanctions.

## DISPOSITION

The March 21, 2023 order granting the motion to enforce settlement and judgment is affirmed.  The City is awarded its costs on appeal.

FRANSON, J.

WE CONCUR:

LEVY, Acting P. J.

SMITH, J.

30.